Amy Todd-Gher, Bar No. 208581
atodd-gher@littler.com
Nicholas C. Lansdown, Bar No. 312915
nlansdown@littler.com
LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, California  92101.3577
Telephone:  619.232.0441
Fax No.:     619.232.4302

Attorneys for Defendant
APPLE INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH FANTA,<br><br>Plaintiff,<br><br>v.<br><br>APPLE INC., a California corporation doing business in California; CLAIRE ARCHER, an individual; ANNE MCNIEL, an individual; and DOES 1-50, inclusive,<br><br>Defendants. | Case No.<br>(removed from Santa Clara Superior Court Case No. 22CV-400298)<br><br>**DEFENDANT APPLE INC.'S NOTICE TO FEDERAL COURT OF REMOVAL OF CIVIL ACTION PURSUANT TO 28 U.S.C. §§ 1332, 1441, AND 1446**<br><br>Complaint Filed:     June 22, 2022 |

LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA  92101.3577
619.232.0441

DEFENDANT APPLE, INC.'S NOTICE OF
REMOVAL TO FEDERAL COURT

**TO THE NORTHERN DISTRICT OF CALIFORNIA, PLAINTIFF JOSEPH FANTA, AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant APPLE INC. ("Apple") hereby removes the above-captioned action from the Superior Court of the State of California, County of Santa Clara, to the United States District Court, Northern District of California, San Jose Division, pursuant to 28 U.S.C. sections 1332(a) (Diversity), 1441(a), and 1446, and Civ. L.R. 3-2(e) on the following grounds:

**I.    JURISDICTION AND VENUE ARE PROPER**

1.    This Court has original jurisdiction under 28 U.S.C. section 1332(a)(1), and this case may be removed pursuant to the provisions of 28 U.S.C. section 1441(a), in that it is a civil action wherein the amount in controversy for the named plaintiff exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, and it is between "citizens of different States."  As set forth below, this case meets all of Section 1332's requirements for removal and is timely and properly removed by the filing of this Notice.

2.    This employment action was filed in the Superior Court of California for the County of Santa Clara.  Accordingly, venue properly lies in the United States District Court for the Northern District of California, San Jose Division pursuant to 28 U.S.C. sections 84(a), 1391, 1446, and Civ. L.R. 3-2(e).

**II.    PLEADING, PROCESS, AND ORDERS**

3.    On June 22, 2022, Plaintiff Joseph Fanta ("Plaintiff") filed a complaint in the Superior Court for the County of Santa Clara entitled JOSEPH FANTA v. APPLE, INC., a California corporation doing business in California; CLAIRE ARCHER, an individual; ANNE MCNIEL, an individual; and DOES 1-50, inclusive, Case No. 22CV-400298.  (Declaration of Amy Todd-Gher in Support of Notice to Federal Court of Removal of Civil Action Pursuant to 28 U.S.C. §§ 1332, 1441, and 1446 ["Todd-Gher Decl."], ¶ 3.)  The Complaint alleges the following causes of action: (1) Sex/Gender Discrimination in Violation of Gov't Code §12940(a); (2) Disability Discrimination in

LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA 92101.3577
619.232.0441

2

DEFENDANT APPLE, INC.'S NOTICE OF
REMOVAL TO FEDERAL COURT

Violation of Gov't Code §12940(a); (3) Wrongful Termination in Violation of Public Policy; (4) Retaliation in Violation of Gov't Code §12940(a); (5) Failure to Take Steps to Prevent Discrimination, Harassment, and Retaliatory Practices in Violation of Gov't Code § 12940(k); (6) Intentional Infliction of Emotional Distress; (7) Unlawful Retaliation in Violation of Public Policy. (*Id.*) The allegations of the Complaint are incorporated into this notice by reference without admitting the truth of any of them.

4.　　As of the date of filing this Removal, Defendants have not been served with the Summons or Complaint.

5.　　Because Defendants have not been properly served, attached hereto as **Exhibit A** is a true and correct copy of the Complaint filed in the Superior Court for the County of Santa Clara. (Todd-Gher Decl., ¶ 3.)

6.　　Attached hereto as **Exhibit B** are the remaining documents as reflected and downloaded from the Santa Clara County Superior Court website, including the Summons and Civil Case Cover Sheet. (Todd-Gher Decl., ¶ 4.)

7.　　To Apple's knowledge, no further process, pleadings, or orders related to this case have been filed in the Santa Clara County Superior Court or served by any party other than as described above. To Apple's knowledge, no proceedings related hereto have been heard in the Santa Clara County Superior Court. (Todd-Gher Decl., ¶ 5.)

## III.　TIMELINESS OF REMOVAL

8.　　On information and belief, Defendants have not been served with the Summons or Complaint, accordingly, this removal is timely. (Todd-Gher Decl., ¶ 6.)

9.　　Pursuant to 28 U.S.C. § 1441(b)(2), this case is removable even though Defendants are citizens of California, the location this case is filed. *See Monfort v. Adomani, Inc.*, No. 18-CV-05211-LHK, 2019 WL 131842, at *4 (N.D. Cal. Jan. 9, 2019) ("By its plain language, 28 U.S.C. § 1441(b)(2) permits an in-state defendant who has not been both joined and served to remove a case to federal court on the basis of diversity jurisdiction. Here, it is undisputed that Defendants removed Plaintiff's

LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA 92101-3577
619.232.0441

3

DEFENDANT APPLE, INC.'S NOTICE OF
REMOVAL TO FEDERAL COURT

1    Complaint before any Defendants were served.  Thus, Defendants' notice of removal
2    was not procedurally improper, and remand is not warranted.").

3    **IV.    DIVERSITY JURISDICTION PURSUANT TO SECTION 1332**

4         10.    This Court has original jurisdiction of the state court action based on
5    diversity of citizenship pursuant to 28 U.S.C. section 1332(a).  Pursuant to 28 U.S.C.
6    section 1441(a) and (b), the state court action may be removed to this Court by Apple
7    because it is a civil action between citizens of different states and the amount in
8    controversy exceeds $75,000, exclusive of interests and costs, as set forth below.

9         **A.    Diversity of Citizenship.**

10        11.    <u>Plaintiff is a Citizen of Illinois</u>. Citizenship of a natural person is
11   established by domicile.  A person's domicile is established by physical presence and
12   an intent to remain indefinitely.  *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986).
13   Residence creates a presumption of one's domicile.  *District of Columbia v. Murphy*,
14   314 U.S. 441, 455 (1941) ("The place where a man lives is properly taken to be his
15   domicile until the facts adduced establish the contrary"); *State Farm Mut. Auto. Ins. Co.*
16   *v. Dyer*, 19 F.3d 514, 529 (10th Cir. 1994) (a party's residence is prima facie evidence
17   of his domicile). As set forth under penalty of perjury in Plaintiff's Notice to the
18   Department of Fair Employment and Housing, as referenced at paragraphs 13, 92, and
19   132 and attached to his complaint as Exhibit 1, p. 1, ¶ 3, <u>Plaintiff is citizen of Morton,</u>
20   <u>Illinois</u>.  This Court may properly consider these documents when determining removal,
21   especially as the authenticity of these documents is not in question.  *Canesco v. Ford*
22   *Motor Company*, 570 F.Supp.3d 872, 882 (S.D. Cal. 2021) ("In assessing the propriety
23   of removal, the district court considers the allegations in both the complaint and notice
24   of removal as well as any documents attached."); *see also Catholic League for Religious*
25   *and Civil Rights v. City and County of San Francisco* (N.D. Cal. 2006) 464 F.Supp.2d
26   938, 941, *aff'd* (9th Cir. 2009) 567 F.3d 595, *on reh'g en banc* (9th Cir. 2010) 624 F.3d
27   1043, and *aff'd* (9th Cir. 2010) 624 F.3d 1043 ("when the complaint is accompanied by
28   attached documents, such documents are deemed part of the complaint"… "the court

LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA 92101.3577
619.232.0441

4

DEFENDANT APPLE, INC.'S NOTICE OF
REMOVAL TO FEDERAL COURT

may consider documents that are not physically attached to the complaint where the authenticity of the documents is not contested and the complaint necessarily relies on them.").

12. <u>Defendant Apple Inc. is a Citizen of California</u>.  For purposes of diversity jurisdiction, a corporation is deemed a citizen of its state of incorporation and the state where it has its principal place of business.  28 U.S. C. § 1332(c)(1).  As clarified by the United States Supreme Court in *Hertz Corp. v. Friend*, 559 U.S. 77 (2010), "the phrase 'principal place of business' [in Section 1332(c)(1)] refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities.  Lower federal courts have often metaphorically called that place the corporation's 'nerve center.'  We believe that the 'never center' will typically be found at the corporation's headquarters." *Id.* at 80-81; *see also Breitman v. May Co. California*, 37 F.3d 562, 564 (9th Cir. 1994) (corporation is citizen of state in which its corporate headquarters are located and where its executive and administrative functions are performed).  Here, Apple was at the time of filing, and remains, a corporation incorporated under the laws of California with its principal place of business in California. *See* Complaint at ¶ 6.

13. <u>Defendant Claire Archer is a Citizen of California</u>.  Ms. Archer resides in the State of California.  *See* Complaint at ¶ 7.  Ms. Archer is a citizen of the State of California.

14. <u>Defendant Anne McNiel is a Citizen of California</u>.  Ms. McNiel resides in the State of California.  *See* Complaint at ¶ 8.  Ms. McNiel is a citizen of the State of California.

15. <u>Plaintiff Joseph Fanta is a Citizen of Illinois</u>.  Plaintiff resides in the State of Illinois.  *See* Complaint at ¶ 5, Exhibit 1, p. 1, ¶ 3 ("Complainant **Joseph Fanta**, resides in the City of **Morton**, State of **IL**.")  Plaintiff is a citizen of the State of Illinois.

16. The Complaint names as defendants "DOES 1-50, inclusive."  Pursuant to 28 U.S.C. section 1441(a), however, the citizenship of defendants sued under fictitious

LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA 92101.3577
619.232.0441

5

DEFENDANT APPLE, INC.'S NOTICE OF
REMOVAL TO FEDERAL COURT

names must be disregarded for the purpose of determining diversity jurisdiction. *See Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690-91 (9th Cir. 1998).

17.     No other party has been named or served as of the date of this removal. Because Plaintiff is a citizen of Illinois, and all Defendants are citizens of the State of California, there is complete diversity among the parties.

**B.     The Amount In Controversy Is Satisfied.**

18.     The amount in controversy is determined from the allegations or prayer of the complaint. *See St. Paul Mercury Idemn. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938).   Where a complaint does not seek a specific monetary amount in damages, Defendants only need to show by a preponderance of the evidence (that it is more probably than not) that Plaintiff's claimed damages exceed the jurisdictional minimum. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 298, 403-04 (9th Cir. 1996).   Further, the U.S. Supreme Court has held under 28 U.S.C. section 1446(a), a defendant seeking to remove a case to federal court need only file "a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014).   The Court further held this language tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure, and that "[a] statement 'short and plain' need not contain evidentiary submissions." *Id.* at 551, 553.

19.     Thus, in measuring the amount in controversy, a court must assume the allegations of the complaint are true and that a jury will return a verdict in favor of the plaintiff on all claims asserted in his complaint. *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002).   The ultimate inquiry is what amount is put "in controversy" by the complaint, not what is actually owed if a plaintiff prevails. *See Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005) ("It's not a question as to what you would owe.   It's a question as to what is in controversy.")

LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA 92101.3577
619.232.0441

6

DEFENDANT APPLE, INC.'S NOTICE OF
REMOVAL TO FEDERAL COURT

20.     Here, as set more fully below, the Court can reasonably ascertain from the Complaint and Plaintiff's Prayer for Relief that the amount in controversy exceeds $75,000, exclusive of interest and costs.[1]  *See Singer v. State Farm Mutual Auto Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) ("The district court may consider whether it is facially apparent from the complaint that the jurisdictional amount is in controversy." (internal citations and quotations omitted)).

## 1.     Plaintiff Seeks Well Over $75,000 in Economic Damages

21.     In his Complaint, Plaintiff seeks economic damages in the form of loss of earnings and other employment benefits.  (Complaint ¶¶ 96, 107, 114, 121, 134, 157, and Prayer for Relief, ¶ 1.)  Plaintiff also seeks recovery of general and special damages for, *inter alia*, "non-economic losses, including, but not limited to, emotional distress" (Complaint ¶¶ 96, 107, 114, 121, 134, 157,  Prayer for Relief, ¶¶ 1-2 ), as well as asserting a specific claim for intentional infliction of emotional distress (Complaint ¶ 140).

22.     Plaintiff alleges that he "earned between $250,000 and $320,000 per year" in addition to other benefits and bonuses.  (Complaint ¶ 17.)  Plaintiff alleges that he resigned in March of 2022.  (Complaint ¶ 86.)  In addition, Plaintiff alleges that he "lost all his unvested stocks; a value of approximately $200,000." (*Id.*)

23.     Although Apple denies that Plaintiff is entitled to recover any damages whatsoever, assuming, *arguendo*, that Plaintiff was awarded back wages for approximately two years, encompassing the time period from his resignation in March 2022 through to the date of trial, likely no sooner than March of 2024 (approximately 18 months from now), the amount of back pay in controversy in this case would total be somewhere between **$500,000 and $640,000** by Plaintiff's own estimations.  *Id.* This more than exceeds the necessary amount in controversy. Even using a conservative

---

[1] The alleged damages calculations contained herein are based upon the allegations in the Complaint, and are for purposes of removal only.  Apple expressly denies that Plaintiff is entitled to any relief whatsoever. Apple expressly reserves the right to challenge Plaintiff's alleged damages in this case.

LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA  92101.3577
619.232.0441

7

DEFENDANT APPLE, INC.'S NOTICE OF
REMOVAL TO FEDERAL COURT

—

estimate of one year's back pay, $250,000 and $320,000, the amount in controversy remains in excess of the jurisdictional limit.

### 2. Plaintiff Additionally Seeks Non-Economic Damages, Attorneys' Fees and Punitive Damages

24.    <u>Emotional Distress Damages</u>: In addition to economic damages, Plaintiff alleges he suffered emotional distress as a result of Defendants' alleged unlawful conduct.  (Complaint ¶¶ 96, 107, 114, 121, 134, 140 157,  Prayer for Relief, ¶¶ 1-2 ). An award of emotional distress damages alone can reasonably be anticipated to be far in excess of the jurisdictional minimum. *See Simmons v. PCR Tech.*, 209 F.Supp.2d 1029, 1034 (N.D. Cal. 2002) (citing case in which an award for pain and suffering in an employment discrimination case totaled $3.5 million, and recognizing that "emotional distress damages in a successful employment discrimination case may be substantial").

25.    In order to establish the amount of emotional distress damages in controversy, a defendant may introduce evidence of jury verdicts in cases involving analogous facts. *See Rivera v. Costco Wholesale Corp.*, 2008 U.S. Dist. LEXIS 58610, *10 (N.D. Cal. July 11, 2008) (*citing Simmons*, 209 F.Supp.2d at 1033); see *also Cain v. Hartford Life & Acc. Ins. Co.*, 890 F.Supp.2d 1246, 1250 (C.D. Cal. 2012) ("Cain seeks to recover emotional distress from Hartford, which must be considered in this [amount in controversy] analysis."); *Richmond v. Allstate Ins. Co.*, 897 F.Supp. 447, 450 (S.D. Cal. 1995) ("The vagueness of plaintiffs' pleadings with regard to emotional distress damages should not preclude this Court from noting that these damages are potentially substantial."); *see also Plata v. Target Corp.,* 2016 WL 6237798, *3 (C.D. Cal. Oct. 25, 2016) (finding it possible that plaintiff could obtain $25,000 in emotional distress damages for a wrongful termination claim where plaintiff had $0 estimated economic losses); Emotional distress damage awards FEHA discrimination cases are often well in excess of $75,000, standing alone. *See, e.g., Sullivan v. Save Mart Supermarkets, et al.,* 2017 Jury Verdicts LEXIS 12578 (Cal. Super. Ct. 2017) ($425,000 in emotional distress damages in a FEHA pregnancy discrimination suit with similar

LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA  92101.3577
619.232.0441

8

DEFENDANT APPLE, INC.'S NOTICE OF
REMOVAL TO FEDERAL COURT

allegations to the instant case); *Massey v. City of Long Beach,* JVR No. 1509220063, 2015 WL 5578119 (Cal. Sup. Ct. 2015) (awarding $520,119 in damages for pain and suffering in FEHA discrimination case); *Gomez v. Magco Drilling* JVR No. 1510280054 (Cal. Sup. 2015); *Beasley v. E. Coast Foods, Inc.,* JVR No. 1509250073, 2015 WL 5678367 (Cal. Sup. Ct. 2015) (awarding $1,500,000 in compensatory damages for pain and suffering in FEHA race discrimination case); *Ko v. The Square Grp.,* JVR No. 1503030036, 2014 WL 8108413 (Cal. Sup. 2014) (awarding $125,000 for pain and suffering in a FEHA disability discrimination case); *see also Simmons*, 209 F.Supp.2d at 1034 (collecting cases); *Olvera v. Sangha Dhindsa Foods, Inc.* JVR No. 1611300020, 2016 WL 7034155 (Cal. Sup. Ct. 2016) (plaintiff was awarded $116,000 for emotional distress damages in pregnancy discrimination case).

26.     In a suit with similar allegations as the present case, the plaintiff was awarded $50,000 for emotional distress damages. *Matyka v. Federal Express Corp.* 27 Trials Digest 3d 43, 1999 WL 1566772 (Cal. Sup. Ct. 1999). There, the plaintiff alleged violations under the CFRA and breach of implied contract when the plaintiff's employment was terminated for excessive absences. The plaintiff suffered from a health condition that required her to miss many days from work. The plaintiff claimed her termination was in retaliation and violation of the CFRA. The jury awarded her **$50,000** in emotional distress damages. In *Kroske v. U.S. Bank Corp.*, 432 F.3d 976 (9th Cir. 2005), the Ninth Circuit found that the district court's conclusion that the plaintiff's "emotional distress damages would add at least an additional $25,000 to her claim" was not clearly erroneous, where she had only $55,000 in lost wages, thus satisfying the amount in controversy requirement "even without including a potential award of attorney's fees." *Id*. at 980. Based on the conservative estimate from *Kroske*, and for purposes of evaluating the amount in controversy on Plaintiff's claims, and based on the foregoing jury verdicts, a conservative estimate of the emotional distress damages is at least **$25,000**.

LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA 92101-3577
619.232.0441

9

DEFENDANT APPLE, INC.'S NOTICE OF
REMOVAL TO FEDERAL COURT

27. <u>Attorneys' Fees</u>**:** Plaintiff also seeks an award of attorneys' fees and costs pursuant to all applicable provisions of law. (Complaint, Prayer, ¶ 7.) When an underlying statute authorizes an award of attorneys' fees, either with mandatory or discretionary language, those fees may be included in the amount in controversy. *Fritsch v. Swift Transp. Co. of Ariz., LLC,* 899 F.3d. 785, 788 (9th Cir. 2018) (the amount in controversy includes future attorney fees recoverable by statute); *Brady v. Mercedes-Benz USA, Inc.*, 243 F.Supp.2d 1004, 1010-11 (N.D. Cal. 2002) (in deciding the amount in controversy issue, court may estimate the amount of reasonable attorneys' fees likely to be recovered by plaintiff if he were to prevail). Attorneys' fees are recoverable as a matter of right to the prevailing party under FEHA. Cal. Gov't. Code § 12965. While Plaintiff's attorneys' fees cannot be calculated precisely, it is reasonable to assume that they could exceed a damages award. *See Simmons*, 209 F. Supp. 2d at 1035 ("The court notes that in its twenty-plus years' experience, attorneys' fees in individual discrimination cases often exceed the damages."); *Beaty v. BET Holdings, Inc.*, 222 F.3d 607 (9th Cir. 2000) (recognizing that award of attorneys' fees of $376,520 may be appropriate in FEHA where compensatory damages were only $30,000, but remanding to district court to clarify whether court had properly exercised its discretion to consider reducing the fee award).

28. Other California courts have upheld large attorneys' fee awards in FEHA cases. *See also Flannery v. Prentice*, 26 Cal. 4th 572 (2001) (affirming award of attorneys' fees and costs of $891,042); *Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470 (9th Cir. 1995) (affirming $724,380 attorneys' fee award in FEHA age discrimination case where plaintiffs' damages awards were significantly less). Conservatively estimating attorneys' fees at the rate of $400/hour, and using a conservative estimate of 150 hours, this adds *at least* an additional **$60,000.00** to the amount in controversy.

29. <u>Punitive Damages</u>**:** Plaintiff also seeks punitive damages. (Complaint, ¶¶ 97, 108, 115, 122, 136, 141, 158, Prayer, ¶ 4 ) The Court must take into account punitive

LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA 92101-3577
619.232.0441

10

DEFENDANT APPLE, INC.'S NOTICE OF
REMOVAL TO FEDERAL COURT

damages for purposes of determining the amount in controversy where such damages are recoverable under state law. *Davenport v. Mut. Benefit Health and Accident Ass'n*, 325 F.2d 785, 787 (9th Cir. 1963); *Brady*, 243 F.Supp.2d at 1009. California law does not provide any specific monetary limit on the amount of punitive damages that may be awarded under Civil Code section 3294. *Boyle v. Lorimar Prods.*, *Inc.*, 13 F.3d 1357, 1360 (9th Cir. 1994). Additionally, employment discrimination cases have the potential for large punitive damages awards. *Simmons*, 209 F.Supp.2d at 1033; *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 719-720 (2009) (punitive damage award of $1,905,000). Punitive damages may be significant even when no compensatory damages are awarded. *Moore vs. JMK Golf LLC,* 25 Trials Digest 16th 15, 2013 WL 3149228 (Cal. Sup. Ct. 2013) ($150,000 punitive damage award in a FEHA pregnancy discrimination leave case): *Torres v. BE Aerospace, Inc.,* JVR No. 1606300035, 2016 WL 3552983 (Cal. Sup. Ct. 2013) ($7,000,000 punitive damage award in FEHA gender discrimination suit).

30.   Although Apple vigorously denies Plaintiff's allegations, if Plaintiff were to prevail on his punitive damages claim, that claim alone could exceed the jurisdictional minimum.  Here, assuming Plaintiff were to recover punitive damages in an amount equal to his alleged compensatory damages, Plaintiff would recover at least **$250,000.00**, the approximate equivalent of the minimum of one year of alleged economic damages.

31.   Plaintiff also seeks such open-ended relief as "such other and further relief as the Court deems fair and just." (Complaint, Prayer, ¶ 10.) Although uncertain in amount, these additional damages claims only serve to increase the amount in controversy. *See Dart Cherokee Basin Operating Co., LLC v. Owens,* 135 S. Ct. 547, 551 (2014) ("When the plaintiff's complaint does not state the amount in controversy, the defendant's notice of removal may do so.").

32.   Based upon the pleadings, it does not appear to a "legal certainty that the claim is really for less than" the minimum amount in controversy. *Spielman v. Genzyme*

LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA  92101-3577
619.232.0441

11

DEFENDANT APPLE, INC.'S NOTICE OF
REMOVAL TO FEDERAL COURT

*Corp.*, 251 F.3d 1, 5 (1st Cir. 2001) (*quoting St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89 (1938)). Apple has carried its burden of demonstrating by a preponderance of the evidence that the amount in controversy in this matter clearly exceeds the jurisdictional minimum of $75,000.

### 3.   Summary of Amount In Controversy

33.   Apple does not concede, and instead wholly denies, that Plaintiff's claims have any merit.  However, when the relief sought by Plaintiff in his Complaint is taken as a whole, the amount in controversy, using conservative estimates, for Plaintiff's claims more likely than not exceeds the $75,000.00 jurisdiction requirement, exclusive of interest and costs:

| Back Pay | $250,000.00 |
|---|---|
| Emotional Distress | $25,000.00 |
| Punitive Damages | $250,000.00 |
| Attorneys' Fees | $60,000.00 |
| **Amount in Controversy** | **$585,000.00** |

Thus, this Court has original jurisdiction over the claims asserted by Plaintiff in this action based on diversity of citizenship jurisdiction under 28 U.S.C. §§ 1332(a)(1) and 1441(a).

## V.   NOTICE OF REMOVAL TO ADVERSE PARTY AND STATE COURT

34.   Following the filing of this Notice of Removal in the United States District Court for the Northern District of California, written notice of such filing will be given by the undersigned to Plaintiff's counsel of record, Lori J. Costanzo, Lucy Goodnough, and Frank Zeccola of The Costanzo Law Firm, and a copy of the Notice of Removal will be filed with the Clerk of the Santa Clara County Superior Court in accordance with 28 U.S.C. § 1446(d).  (Todd-Gher Decl., ¶ 6.)

/ / /

/ / /

/ / /

LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA  92101.3577
619.232.0441

12

DEFENDANT APPLE, INC.'S NOTICE OF
REMOVAL TO FEDERAL COURT

1   WHEREFORE, pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, Apple hereby

2   removes this action from the Superior Court of the State of California, County of Santa

3   Clara, to the United States District Court for the Northern District of California, San

4   Jose Division.

5   Dated:  July 21, 2022

6                                                          LITTLER MENDELSON, P.C.

7

8                                                          *s/Amy Todd-Gher*
                                                           Amy Todd-Gher
9                                                          Nicholas C. Lansdown

10                                                         Attorneys for Defendant
                                                           APPLE INC.
11

12   4881-9129-1946.1 / 625000-6816

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
501 W. Broadway, Suite 900
San Diego, CA  92101.3577
619.232.0441

13                              DEFENDANT APPLE, INC.'S NOTICE OF
                                REMOVAL TO FEDERAL COURT

# EXHIBIT A

E-FILED
6/22/2022 11:46 AM
Clerk of Court
Superior Court of CA,
County of Santa Clara
22CV400298
Reviewed By: M. Bui

Lori J. Costanzo, SBN 142633
Lucy Goodnough, SBN 310607
Frank Zeccola, SBN 308875
COSTANZO LAW FIRM
111 West St. John, #700
San Jose, CA 95113
Phone:    408.993.8493
Fax:      408.993.8496
Email:    Lori@costanzo-law.com
          lucy.goodnough@costanzo-law.com
          frank.zeccola@costanzo-law.com

Attorney for **Plaintiff Joseph Fanta**

**IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**
**IN AND FOR THE COUNTY OF SANTA CLARA**

| | |
|---|---|
| JOSEPH FANTA, an individual,<br><br>Plaintiff,<br><br>-v-<br><br>APPLE INC., a California corporation doing business in California; CLAIRE ARCHER, an individual; ANNE MCNIEL, an individual; and DOES 1-50, inclusive,<br><br>Defendants. | Case No. 22CV400298<br><br>UNLIMITED JURISDICTION<br><br>**COMPLAINT FOR DAMAGES:**<br><br>1. **Sex/Gender Discrimination in Violation of Gov't Code § 12940(a)**<br>2. **Disability Discrimination in Violation of Gov't Code §12940(a)**<br>3. **Wrongful Termination in Violation of Public Policy**<br>4. **Retaliation in Violation of Gov't Code § 12940(h)**<br>5. **Failure to Take Steps to Prevent Discrimination, Harassment, and Retaliatory Practices in Violation of Gov't Code § 12940(k)**<br>6. **Intentional Infliction of Emotional Distress**<br>7. **Unlawful Retaliation in Violation of Public Policy**<br><br>**JURY TRIAL DEMANDED**<br><br>**PUNITIVE DAMAGES SOUGHT** |

COSTANZO LAW FIRM
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

1

PLAINTIFF JOSEPH FANTA, by and through his attorneys of record herein, brings this Complaint against the above-named Defendants, and in support thereof alleges the following:

## JURISDICTION AND VENUE

1. This Court has jurisdiction over this action pursuant to California Code of Civil Procedure (CCP) §410.10 and California Constitution Article VI, Section 5. The amount in controversy, exclusive of interest and costs, exceeds the sum of $25,000.00.

2. This Court has jurisdiction over Defendant APPLE INC. as a California Corporation.

3. This Court has jurisdiction over Defendant APPLE INC. as a business entity that does sufficient business, has sufficient minimum contacts in California, and/or otherwise intentionally avails itself of the California market, through the sale, marketing, and use of its products in California, to render the exercise of jurisdiction over it by the California courts consistent with traditional notions of fair play and substantial justice.

4. Venue is proper pursuant to CCP § 395(a) in that Plaintiff is informed and believes and thereon alleges, among other things that the obligations herein sued upon arose, occurred, happened and were and now are due, owing and payable from Defendant to Plaintiff in the above-entitled judicial district in the County of SANTA CLARA, State of California.

## PARTIES

5. PLAINTIFF JOSEPH FANTA ("PLAINTIFF" or "FANTA") is an individual who was employed at DEFENDANT APPLE INC.

6. On information and belief, DEFENDANT APPLE INC. ("DEFENDANT" or "APPLE") was at all times a California corporation operating in California.

7. DEFENDANT CLAIRE ARCHER ("DEFENDANT" or "ARCHER") is an individual who, on information and belief, resides in the County of Santa Clara, State of California. At all relevant times, ARCHER was either the NPI Manager or Senior Quality Manager at APPLE.

8. DEFENDANT ANNE MCNIEL ("DEFENDANT" or "MCNIEL") is an individual who, on information and belief, resides in the County of Santa Clara, State of California. At all relevant times, MCNIEL was the NPI Quality Engineer Manager at APPLE.

COSTANZO LAW FIRM
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

COSTANZO LAW FIRM
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

9.  PLAINTIFF is ignorant of the true names and capacities of the DEFENDANTS sued herein as DOES 1 through 50, and therefore sues them by such fictitious names. PLAINTIFF is informed and believes and thereon alleges that said DEFENDANTS are in some manner legally responsible for the activities and damages alleged herein. PLAINTIFF will amend this Complaint to allege their true names and capacities when ascertained.

10. PLAINTIFF is informed and believes and thereon alleges that at all times herein mentioned each of the DEFENDANTS were acting as the partner, agent, servant, and employee of each of the remaining DEFENDANTS, and in doing the things alleged herein was acting within the course and scope of such agency and with the knowledge of the remaining DEFENDANTS.

## INTRODUCTION

11. This is an action for damages as to: (1) Sexual Harassment – Hostile Work Environment in Violation of the Fair Employment and Housing Act ("FEHA"); (2) Disability Harassment in Violation of FEHA; (3) Wrongful Termination in Violation of Public Policy; (4) Retaliation in Violation of the California Family Rights Act ("CFRA") under FEHA; (5) Failure to Prevent Harassment and Retaliation in Violation of FEHA; and (6) Intentional Infliction of Emotional Distress; and (7) Retaliation in Violation of Public Policy.

12. This action arises out of events involving PLAINTIFF JOSEPH FANTA and DEFENDANTS APPLE INC., CLAIRE ARCHER, ANNE MCNIEL, and DOES 1-50.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. Defendants regularly and systematically do business in the State of California and are subject to suit under the Fair Employment and Housing Act ("FEHA") in that Defendants regularly employ five or more persons. Plaintiff timely filed a charge of discrimination, failure to investigate discrimination and retaliation against Defendants with the California Department of Fair Employment and Housing ("DFEH"). On June 21, 2022, Plaintiff received a notice of the right to sue from the DFEH pursuant to California Government Code section 12965(b). Plaintiff filed this action within one year of the date of his DFEH right-to-sue letter; therefore, administrative remedies have been properly exhausted. A true and correct copy of the DFEH right to sue notice is attached hereto as "**Exhibit 1**".

COSTANZO LAW FIRM
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

### GENERAL ALLEGATIONS AND STATEMENT OF FACTS

14. PLAINTIFF incorporates by reference the factual allegations set forth in all preceding paragraphs.

15. FANTA was offered a position with APPLE, one of the most well-known companies in the world, on August 7, 2017.

16. In order for FANTA to take the job at APPLE, his wife had to give up her tenured and high-paying teaching position of over ten years in Michigan.

17. FANTA started working at APPLE on September 5, 2017, as a Project Quality Engineer on the Mac Quality Team. Throughout his employment, he earned between $250,000 and $320,000 per year, plus a full benefits package. He performed his job well and received positive performance reviews in 2018 and 2019, with annual pay raises and bonuses totaling $81,000, including a $6,000 bonus and refresh grant of ▉ restricted stock units each year.

18. What at first seemed like an amazing career opportunity at APPLE quickly soured as a result of his direct supervisors CLAIRE ARCHER and ANNE MCNIEL creating a strong anti-male culture within the team both during and after work hours.

### *Group Chat Messages are Documented Evidence of APPLE'S Culture of Discrimination*

19. ARCHER set up a text group with certain female APPLE employees and female significant others of male employees, including FANTA'S wife.

20. In that group chat, ARCHER made disparaging comments about not wanting men around. ARCHER bragged about getting a male employee transferred to another team and replacing him with a woman.

21. In a February 25, 2020, group text exchange, one woman commented, "The 14th weekend is at Patrick's day eve! We could all bring green booze! And . . . I guess the guys could come." ARCHER replied to the group, "Guys? meh."

22. Later, on February 25, 2020, when a female colleague told ARCHER in a group exchange, "The guys are so worthless! You need to change up your team. [smiley emoji]", ARCHER responded, "I did I got rid of your guy ▉ ! ha ha."

23. When the woman responded, "He was the worst I need to follow suit. On a serious note . . . we all of us want a girls night out!", ARCHER replied, "OH yes! Next Saturday?"

24. At one point, one of FANTA'S male colleagues told him that ARCHER made a comment that she was glad she finally had more females than males on her team. As FANTA'S colleague explained in a text message to him, "She said [sic] mentioned off handed comment – not sure what the deal was—that she finally had more girls than guys on her team…but she followed up her comment with—they are all qualified so that would cover her butt."

25. MCNIEL sent similar anti-male texts to female team members. As one example, on October 13, 2020, she sent a group text saying, "Yay for more women in this announcement."

### *FANTA Was Denied an Earned Bonus for His Contributions to APPLE, and He Was Replaced by a Female Co-Worker*

26. FANTA started working on the ███████ project in the summer of 2018, and final implementation occurred in May 2019. Despite his overwhelming workload, he ultimately completed implementation of the project on schedule.

27. The ███████ project FANTA conceived of and implemented has already saved APPLE millions of dollars.

28. ARCHER acknowledged the importance of the work FANTA was doing. At a February 8, 2019, staff meeting, ARCHER told the team that completing the ███████ project would warrant an "Exceeds Expectations" rating in the "Innovation" category for annual review purposes.

29. However, when review time came around in late 2019, ARCHER and MCNIEL ignored FANTA'S notable contributions in the area of innovation and rated him merely as "Achieved Expectations." This rating is directly contrary to a comment in the same review which states, "Joe's concept of ███████ was definitely innovative . . . ."

30. This was upsetting in and of itself, but even more so because FANTA only earned his spring bonus if he achieved "Exceeds Expectations" on his performance review; ARCHER'S and MCNIEL'S arbitrary and biased "Achieved Expectations" rating in his 2019 performance review cost him a well-deserved bonus.

COSTANZO LAW FIRM
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

COSTANZO LAW FIRM
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

31. FANTA found ARCHER'S and MCNIEL'S refusal to acknowledge his contributions so upsetting and wrong that he included a written response in his 2019 performance review before signing it on November 1, 2019.

32. FANTA'S response highlighted his conception and implementation of the money-saving ███ ███ project: "In over 10 years of having a professional career, this is the first performance review I have responded to. While I respect my manager's opinion, I have to respectfully disagree with some of the comments in this review . . . . The project was a resounding success. There were no delays, no impact to line speeds, no hidden costs, and cross functional support and encouragement . . . . Estimated cost savings for this program are at 1.3 million and if implemented on all of Mac, the savings would be over 10 million per year."

33. To add insult to injury, while FANTA was excited for the ██ version of the █████ project, in or about September 2019, ARCHER inexplicably took him off the project and out of ████ █████ altogether, replacing him there with a female member of the team.

34. ARCHER'S and MCNIEL'S downplaying of his notable accomplishment with the █████ project caused FANTA tremendous anxiety and disappointment.

35. Unfortunately, this was not the first nor last time FANTA'S contributions to APPLE were ignored. Another example occurred when FANTA made a key introduction for APPLE to a third-party company that went on to work with APPLE on multiple projects. FANTA was not given any credit for this imperative introduction.

### ***FANTA'S Leadership Was Undermined by Female Colleagues***

36. ARCHER and MCNIEL often told FANTA that he needed to appear as the lead Product Quality Engineer ("PQE"). When he took on that role, however, they routinely undermined him in front of his colleagues.

37. For example, at a recent █████ meeting about a ██ build, which was a large cross-functional team meeting, FANTA told the group that he needed to discuss the quality sampling plan offline with his team after the call.

38. MCNIEL immediately spoke up and told the group that there was no need for FANTA to discuss the quality sampling plan with his team.

39. With female PQEs, MCNIEL never contradicted them in front of their colleagues and always publicly supported their decisions to speak offline about issues.

40. By undermining FANTA'S role as the lead PQE on the ▮ build, MCNIEL created doubt within his team about FANTA'S capabilities.

41. As another example, during a recent call with the Contract Manufacturer, the team was brainstorming about the layout and ways to overcome certain issues. FANTA came up with an idea to use an ▮▮▮▮▮▮ between ▮▮▮ to simplify security requirements.

42. During the call, the Contract Manufacturer said FANTA'S idea was a good one and that they would investigate it. Despite that show of support, however, MCNIEL interjected herself and claimed that FANTA'S idea was bad and would not possibly work.

43. MCNIEL did not criticize anyone else on the call during that brainstorming session.

### *FANTA Was Overlooked for Work Opportunities in Favor of Female APPLE Employees*

44. ARCHER and MCNIEL were quick to coach and support female team members while complaining vocally about men on the team.

45. In early 2018, FANTA asked ARCHER to add him to the interview team, but she only gave him the opportunity to interview once. He later learned that several female team members regularly participated in multiple interviews.

46. ARCHER also asked FANTA to skip a training session at ▮▮▮▮, despite telling several female employees to make time to take the same class. FANTA was taken aback and asked both ARCHER and MCNIEL to let him take the third class for his professional development, but they refused.

47. ARCHER supported women for promotions over their male counterparts. ARCHER promoted at least two female employees—MCNIEL and ▮▮▮▮—before promoting ▮▮▮, a male employee who was with APPLE for seven plus years and had more experience than either MCNIEL or Ms. ▮▮▮.

/ / /

/ / /

/ / /

COSTANZO LAW FIRM
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

### *FANTA Was Given a Demanding Travel Schedule and Berated for Wanting to Spend More Time with His Young Children*

48. ARCHER also had unrealistic expectations of FANTA with respect to time away from his family, requiring him to report directly to work after having spent the prior 14 days in China on a business trip.

49. After an October 5, 2018, team meeting, ARCHER stated that employees were required to be back in the office the day of landing from travel.

50. ARCHER pushed back on allowing FANTA to take even a day off work between trips to China, even if there was no weekend between trips.

51. During one period, FANTA traveled to China multiple times and had only five days at home before he returned to China. His three young children were acting out because he had been away for so long, so FANTA requested two days off work to spend with his family before having to fly back to Asia.

52. Although ARCHER begrudgingly gave FANTA the two days off that he requested, she tried to make him feel guilty about it by passive aggressively texting him, "Ideally I'd like you there Thursday but I know the kids have struggled."

53. When FANTA raised the issue of his excessive travel with ARCHER, she grew angry with him and pointed out that he had already used the most vacation and compensatory time of anyone on the team.

### *FANTA and His Male Colleagues Were Harassed and Humiliated Because of Their Gender*

54. Although FANTA adhered strictly to APPLE'S written travel policy, ARCHER and MCNIEL also harassed him regarding his travel expenses—in contrast to his female counterparts. Their harassment included to referring him to Employee Relations ("ER") to investigate his expense reports, even though there was no basis to do so.

55. ARCHER often complained to FANTA about his male colleagues but did not complain about female employees.

56. APPLE management created a toxic work environment for not only FANTA but for other male employees. For example:

COSTANZO LAW FIRM
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

a. ARCHER frequently made disparaging comments about Mr. ███ and Mr. ███, calling them both "worthless".

b. FANTA worked extensively with ███ on APPLE'S ███ project. ARCHER often made unflattering comments about Mr. ███ within earshot of other employees, and Mr. ███ once confided in FANTA that he knew ARCHER did not like him and that he overheard some of her negative remarks about him.

c. Messrs. ███, ███, and ███ all eventually left APPLE.

d. Another male employee, ███, filed an HR complaint after ARCHER said he "does not know how to communicate.  Please do not let him speak in meetings."

e. Returning from a meeting one day, ARCHER bragged to the team that a text she had up on her screen that had negative comments about an employee accidentally got displayed at the meeting. That cavalier attitude was typical of the unprofessional, bullying behavior ARCHER frequently directed at FANTA and other male employees.

f. FANTA overheard ARCHER tell a male team member to "lay off the cologne" as it was "too much." FANTA then saw the man sniff himself to see if his cologne was overbearing. ARCHER did not make such degrading, inappropriate comments to female APPLE employees, reserving them for FANTA and his male colleagues.

57. Additionally, ARCHER often used vulgar, abusive language to criticize FANTA'S work. For example, on FANTA'S first night in China after flying there from the U.S., then working a full day, ARCHER sent him a text message that read, "Your ███ file is fucked." When FANTA asked which part was wrong, ARCHER replied, "All of it It's so bad And changing cycle timesvv Wtf? And that packaging break out thing??"

58. In the end, FANTA'S file was actually correct, but ARCHER never apologized to him for her vulgar outburst and misplaced criticism.

### *FANTA Was Discriminated Against Because of his Disability*

59. ARCHER'S and MCNIEL'S abusive treatment created such a hostile working environment for FANTA that in August 2019 he started experiencing heart palpitations and severe work-related anxiety.

60. Additionally, FANTA suffers from severe allergies and sinus issues which are considered disabilities under California law. ARCHER was aware of his disability since 2017. Over the course of several months, ARCHER often made critical comments about FANTA'S breathing while he sat at his desk, telling him in a loud voice, "Fanta, why are you sighing so much over there?", "Fanta, you okay?" and "Fanta, you're breathing heavy."

61. FANTA'S colleagues could hear ARCHER'S humiliating comments.

62. While FANTA tried to laugh off ARCHER'S remarks, they caused him a great deal of anxiety. While sitting at his desk, he found himself constantly monitoring how he breathed so as not to attract unwanted attention from ARCHER. Sometimes he felt the need to breathe deeply but forced himself not to.

63. The fact that he could not breathe deeply while sitting at his desk for fear that ARCHER might publicly criticize him for making too much noise only exacerbated his palpitations and anxiety.

64. FANTA frequently noticed his heart beating irregularly and felt as if he could not breathe, so he often had to leave his desk and go outside to get some air, which reduced his productivity.

65. FANTA'S heart palpitations and anxiety became so severe that on December 12, 2019, he had to visit the emergency room, where he was kept for several hours of observation.

66. On the advice of his physician, FANTA applied for and received approval for CFRA disability leave. FANTA was out of the office on approved short-term disability leave from December 14, 2019, to March 2, 2020.

### *FANTA Was Retaliated Against for Taking Disability Leave*

67. When FANTA returned from leave on March 2, 2020, he was shocked to encounter blatant retaliation from ARCHER and MCNIEL, who apparently resented him for having a disability and needing a disability leave accommodation.

68. In a March 2, 2020, email, FANTA'S first day back at work, MCNIEL targeted him by sending him an extensive list of tasks to complete. MCNIEL did not allow FANTA even a day to reacclimate to being back in the office or the opportunity to catch up on the more than 3,000 emails that accumulated in his absence.

COSTANZO LAW FIRM
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

69. MCNIEL'S list of tasks was completely unrealistic and created so much anxiety in FANTA that it exacerbated the disability for which he went on leave.

70. On March 5, 2020—just two days after FANTA returned to work—MCNIEL targeted him again by referring him to ER for purported violations of APPLE'S travel policy, as reflected in his expense reports. However, the ███████████████, Apple's third-party administrator for leave requests, specifically instructed FANTA not to perform any work duties during his leave. Furthermore, ARCHER and MCNIEL texted FANTA that Human Resources (HR) said not to worry about the expense reports and that he could complete them when he came back from leave.

71. FANTA'S disability continued to worsen as his managers continued to target and retaliate against him.

72. Moreover, after returning to the office following his leave, FANTA learned that several employees saw various managers, including ARCHER and MCNIEL, send disparaging texts about FANTA while he was out on disability leave.

73. FANTA also noticed that ARCHER'S and MCNIEL'S attitude toward him changed dramatically when he returned to work. They only spoke to him when absolutely necessary and avoided him to the extent they could.

74. ARCHER'S and MCNIEL'S retaliation against FANTA for taking approved leave carried over into his 2020 performance review. ARCHER and MCNIEL rated FANTA "Expected more – Did not always perform at the level expected of the role" in the "Teamwork" category, "Achieved expectations – Performed at the high level expected of the role" in the "Innovation" category, and "Expected more – Did not always perform at the level expected for the role" in the "Results" category.

75. It was around this time, August 2020, that FANTA moved with his wife and three young children into an RV due to his fear of further retaliation and losing his stable income from APPLE.

76. In FANTA'S October 13, 2020, review, ARCHER indirectly criticized FANTA for taking the disability leave to which he was legally entitled, characterizing it as a "burden on team members".

COSTANZO LAW FIRM
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

77. The only possible instances where "burdens" might have been placed on FANTA'S team members was when he was out on disability leave: At no other time throughout the year did ARCHER or MCNIEL—or anyone else in management—tell FANTA that his colleagues were having to fill in gaps because of the alleged "inconsistency" referred to in his 2020 performance review. In fact, FANTA was the one filling gaps left by other employees. For example, when FANTA returned from his first leave, he was asked to take over for ███████ on a new launch after ████ 's abrupt departure. FANTA was able to jump into the program and launch it successfully with minimal assistance from ARCHER and MCNIEL. This was conveniently left off his performance review.

78. Due to the escalation of the harassment, FANTA took another medical leave from December 2020 through March 14, 2022.

79. From December 2020 through March 2022, FANTA was denied disability and received no pay during this time. Additionally, for the time he was out, he missed out on a bonus and a stock refresh which he was entitled to.

80. It was only after FANTA'S leave when he realized APPLE'S final act of retaliation. While FANTA was out on disability leave, his job title was changed to "Associate." The term "Associate" in the tech field, and many other fields, is analogous to a person with less experience. Changing his title was an act of retaliation and could damage FANTA'S chances at finding future employment. Beyond that, it caused FANTA severe emotional distress when he found out his well-earned job title had been changed simply because he took disability leave.

### *FANTA Filed Multiple Complaints with APPLE*

81. After his managers wrongfully referred him to ER for alleged expense report violations and gave him a poor performance review that ignored his substantial contributions to his team and APPLE as a whole, FANTA realized that ARCHER and MCNIEL would never afford him the same opportunities they gave his female colleagues.

82. Thus, on October 27, 2020, FANTA sent APPLE a complaint that read, "Hello, I believe I am being targeted because I am a man, had a disability, and took a disability leave."

COSTANZO LAW FIRM
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

83. FANTA also filed a case with the report key number ███████ in APPLE'S third-party external reporting system, ███████.

84. On March 11, 2022, FANTA received an email from ███████ from ER at APPLE. She said that she conducted an "investigation" and "was not able to substantiate you were targeted." No details on that "investigation" were provided but it is clear that not all the evidence was considered with equal weight.

85. FANTA experienced significant emotional distress as a result of the foregoing conduct. FANTA currently attends weekly therapy to help deal with the continued emotional trauma.

### *FANTA Was Constructively Discharged*

86. On March 14, 2022, after enduring years of discrimination and working in a hostile work environment, FANTA was forced to resign from APPLE for the sake of his health and well-being. By resigning, FANTA lost all his unvested stocks; a value of approximately $200,000.

87. APPLE took ten (10) days to acknowledge his resignation.

88. Since his resignation, FANTA found a new job paying *less than a half* of what he made at APPLE. He was forced to relocate his family and incur significant relocation costs due to being unable to afford Silicon Valley's high cost of living with his new salary.

### FIRST CAUSE OF ACTION
### SEX/GENDER DISCRIMINATION
### VIOLATION OF CAL. GOV. CODE §§ 12940 et seq.
### AGAINST DEFENDANTS APPLE, ARCHER, MCNIEL, AND DOES 1 – 50

PLAINTIFF re-alleges and incorporates herein by reference all previous allegations set forth in this Complaint as though fully set forth herein.

89. The above conduct by PLAINTIFF'S supervisors, ARCHER and MCNIEL, was unwelcome, directed towards PLAINTIFF, and was part of an ongoing and continuing pattern of conduct.

90. The above conduct caused PLAINTIFF to perceive his work environment as intimidating, hostile, abusive, or offensive, and a reasonable man in PLAINTIFF'S position would perceive the work environment as intimidating, hostile, abusive, or offensive.

91. Complaints and/or information regarding much of the harassing conduct were made to DEFENDANTS. After the complaints, the harassment continued.

92. PLAINTIFF filed timely complaints against DEFENDANTS with California's Department of Fair Employment and Housing ("DFEH") alleging sexual harassment, disability harassment, retaliation, and failure to prevent harassment and retaliation.  Thereafter, PLAINTIFF received from the DFEH notification of his right to sue in the Courts of the State of California the DEFENDANTS against which complaints had been filed.

93. There was no legitimate performance-based reason for PLAINTIFF to be (a) denied work opportunities such as attending ████████ classes, (b) undermined in his leadership by his female supervisors for no reason other than embarrassment, (c) denied a bonus after completing the ████████ on time and saving APPLE millions of dollars, (d) replaced by a female employee on the ████████ despite meeting or exceeding expectations, (e) overlooked for promotions and career advancements in favor of female employees, (f) denied time with his family due to APPLE'S demanding travel schedule and then ridiculed for taking time with his young children, (g) wrongly referred to ER over legitimate travel expenses, (h) gossiped about over company texts, (i) criticized for merely breathing and harassed for taking disability leave for his heart palpitations and anxiety, (j) given the demoted title of "Associate" after taking disability leave, (k) denied a legitimate investigation into his complaint, (l) lowered performance reviews, (m) denied pay, bonuses, and a stock refresh, and (n) retaliated against and forced to work in a hostile work environment; as such, his gender was undoubtedly a factor as to why he was continually discriminated against.

94. DEFENDANTS' acts were malicious, oppressive, or fraudulent with intent to vex, injure, annoy, humiliate, and embarrass PLAINTIFF, and in conscious disregard of the rights or safety of PLAINTIFF and other employees of DEFENDANTS, and in furtherance of DEFENDANTS' ratification of the wrongful conduct of the employees and managers of DEFENDANTS. Because the above-described words and actions, among others, were spoken or carried out and/or ratified by DEFENDANTS and/or managerial agents of DEFENDANTS in whom PLAINTIFF placed his justified and good faith trust, and because said DEFENDANTS acted in a deliberate,

COSTANZO LAW FIRM
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

malicious, and intentional manner in order to injure and damage the PLAINTIFF, and/or with callous disregard for PLAINTIFF'S rights, PLAINTIFF is entitled to recover punitive damages from DEFENDANTS.

95. By reason of the conduct of DEFENDANTS and each of them as alleged herein, PLAINTIFF has necessarily retained attorneys to prosecute the within action. PLAINTIFF is therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing the within action.

96. As a result of DEFENDANTS and each of their actions, PLAINTIFF sustained economic damages to be proven at trial. As a further result of DEFENDANTS' and each of their actions, PLAINTIFF suffered non-economic losses including, but not limited to, emotional distress resulting in damages to be proven at trial.

97. The above harassing conduct violates California's FEHA, Cal. Gov. Code §§ 12940 et seq., and California public policy and entitles PLAINTIFF to all categories of damages, including exemplary or punitive damages.

98. Defendant APPLE is directly liable for the conduct of their owners, managers, directors, supervisors and other employees and agents.

**WHEREFORE,** Plaintiff prays for relief set forth below.

## SECOND CAUSE OF ACTION
### DISABILITY DISCRIMINATION
### IN VIOLATION OF GOV'T CODE § 12940(a)
### AGAINST DEFENDANTS APPLE, ARCHER, AND DOES 1 – 50

PLAINTIFF re-alleges and incorporates herein by reference all previous allegations set forth in this Complaint as though fully set forth herein.

99. The above conduct by PLAINTIFF'S supervisors, ARCHER and MCNIEL, was unwelcome, directed towards PLAINTIFF, and was part of an ongoing and continuing pattern of conduct.

100.    Pursuant to California Government Code section 12940(a), it is unlawful for an employer to discriminate against an employee because of that employee's physical or mental disability.

101.    At all times relevant to this Complaint, PLAINTIFF was qualified for and could perform the essential functions of his position with Defendants, with reasonable accommodation.  Defendants were motivated by discrimination against PLAINTIFF on the basis of his disability and subjected him to disparate and unfavorable treatment compared to similarly situated employees who did not have disabilities.

102.    The above conduct caused PLAINTIFF to perceive his work environment as intimidating, hostile, abusive, or offensive, and a reasonable man in PLAINTIFF'S position would perceive the work environment as intimidating, hostile, abusive or offensive.

103.    Complaints and/or information regarding much of the harassing conduct were made to DEFENDANTS. After the complaints, the harassment continued.

104.    PLAINTIFF filed timely complaints against DEFENDANTS with the DFEH alleging sexual harassment, disability harassment, retaliation, and failure to prevent harassment and retaliation. Thereafter, PLAINTIFF received from the DFEH notification of his right to sue in the Courts of the State of California, the DEFENDANTS against which complaints had been filed.

105.    DEFENDANTS' acts were malicious, oppressive, or fraudulent with intent to vex, injure, annoy, humiliate, and embarrass PLAINTIFF, and in conscious disregard of the rights or safety of PLAINTIFF and other employees of DEFENDANTS, and in furtherance of DEFENDANTS' ratification of the wrongful conduct of the employees and managers of DEFENDANTS. Because the above-described words and actions, among others, were spoken or carried out and/or ratified by DEFENDANTS and/or managerial agents of DEFENDANTS in whom PLAINTIFF placed his justified and good faith trust, and because said DEFENDANTS acted in a deliberate, malicious, and intentional manner in order to injure and damage PLAINTIFF, and/or with callous disregard for PLAINTIFF'S rights, PLAINTIFF is entitled to recover punitive damages from DEFENDANTS.

106.    By reason of the conduct of DEFENDANTS and each of them as alleged herein. PLAINTIFF has necessarily retained attorneys to prosecute the within action. PLAINTIFF is therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing the within action.

107.   As a result of DEFENDANTS and each of their actions, PLAINTIFF sustained economic damages to be proven at trial. As a further result of DEFENDANTS' and each of their actions, PLAINTIFF suffered non-economic losses including but not limited to emotional distress resulting in damages to be proven at trial.

108.   The above harassing conduct violates California's FEHA, Cal. Gov. Code §§ 12940 et seq., and California public policy and entitles PLAINTIFF to all categories of damages, including exemplary or punitive damages.

**WHEREFORE,** Plaintiff prays for relief set forth below.

## THIRD CAUSE OF ACTION
**WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY**
*TAMEY v. RICHFIELD COMPANY*
**AGAINST DEFENDANTS APPLE AND DOES 1 – 50**

PLAINTIFF re-alleges and incorporates herein by reference all previous allegations set forth in this Complaint as though fully set forth herein.

109.   Jurisdiction is invoked in this court pursuant to the public policy and common law of the State of California, pursuant to *Tameny v. Atlantic Richfield Company*, 27 Cal. 3d 167 (1980).

110.   DEFENDANTS terminated Plaintiff's employment based upon PLAINTIFF having a protected characteristic and/or engaging in a protected activity, as alleged herein; namely, gender and disability.

111.   PLAINTIFF is informed and believes and based thereon alleges that DEFENDANTS' conduct, as described herein, was substantially motivated by PLAINTIFF having a protected characteristic and/or engaging in a protected activity, as alleged herein.

112.   PLAINTIFF is informed and believes and based thereon alleges that all DEFENDANTS, including the Defendants named as DOES 1 through 50, inclusive, aided, abetted, incited, compelled, coerced, or conspired to commit one or more of the acts alleged in this Cause of Action.

/ / /

/ / /

COSTANZO LAW FIRM
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

113.    The conduct of DEFENDANTS described herein above was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for PLAINTIFF's rights, and further, with the intent, design and purpose of injuring PLAINTIFF.

114.    As a proximate result of DEFENDANTS' wrongful acts PLAINTIFF has suffered, and continues to suffer, substantial losses incurred in seeking substitute employment and in earnings, bonuses, deferred compensation, stock options, and other employment benefits; and has suffered, and continues to suffer, emotional distress in an amount according to proof at the time of trial.

115.    DEFENDANTS, through their officers, managing agents, and/or their supervisors, authorized, condoned and/or ratified the unlawful conduct described herein above. By reason thereof, PLAINITFF is entitled to an award of punitive damages in an amount according to proof at the time of trial, as well as attorneys' fees and costs, pursuant to statute.

**WHEREFORE,** Plaintiff prays for relief set forth below.

### FOURTH CAUSE OF ACTION
### RETALIATION UNDER THE CFRA
### VIOLATION OF CAL. GOV. CODE §§ 12945.2 et seq.
### AGAINST DEFENDANTS APPLE AND DOES 1 – 50

PLAINTIFF realleges and incorporates by reference the factual allegations set forth in all preceding paragraphs.

116.    The CFRA requires employers to provide twelve (12) weeks of leave for any employee who has been employed by the company for over a year and has worked over 1,250 hours for the employer over the previous year for family medical leave. The CFRA also requires employers to return an employee who takes leave under the act to the same or comparable position at the conclusion of the employee's leave.

117.    DEFENDANTS are employers as defined by the CFRA. DEFENDANTS have over 50 employees within a 75-mile radius of PLAINTIFF'S work location. At the time of PLAINTIFF'S request for leave, he had been employed by DEFENDANTS for over one year and had worked for DEFENDANTS for over 1,250 hours during the previous year.

COSTANZO LAW FIRM
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

118.   In violation of the CFRA, DEFENDANTS and each of them retaliated and discriminated against PLAINTIFF by overloading him with an unrealistic list of tasks to perform, referring him to ER for non-existent violations of Apple's travel policy, circulating disparaging text messages about him, speaking to him only when absolutely necessary but otherwise avoiding him, and giving him a poor performance review that ignored his significant accomplishments, all in retaliation for him taking leave.

119.   DEFENDANTS' acts were malicious, oppressive, or fraudulent with intent to vex, injure, annoy, humiliate, and embarrass PLAINTIFF, and in conscious disregard of the rights or safety of PLAINTIFF and other employees of DEFENDANTS, and in furtherance of DEFENDANTS' ratification of the wrongful conduct of the employees and managers of DEFENDANTS. Accordingly, PLAINTIFF is entitled to recover punitive damages from DEFENDANTS.

120.   By reason of the conduct of DEFENDANTS and each of them as alleged herein, PLAINTIFF has necessarily retained attorneys to prosecute the within action. PLAINTIFF is therefore entitled to reasonable attorney's fees and litigation expenses, including expert witness fees and costs, incurred in bringing the within action.

121.   As a result of DEFENDANTS and each of their actions, PLAINTIFF sustained economic damages to be proven at trial. As a further result of DEFENDANTS' and each of their actions, PLAINTIFF suffered emotional distress resulting in damages to be proven at trial.

122.   The above discriminating conduct violates the CFRA and California public policy and entitles PLAINTIFF to all categories of damages, including exemplary or punitive damages.

**WHEREFORE,** Plaintiff prays for relief set forth below.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**FIFTH CAUSE OF ACTION**
**FAILURE TO PREVENT HARASSMENT AND RETALIATION**
**VIOLATION OF CAL. GOV. CODE §§ 12940 et seq.**
**AGAINST DEFENDANTS APPLE AND DOES 1 – 50**

PLAINTIFF realleges and incorporates by reference the factual allegations set forth in all preceding paragraphs with the same force and effect as though set forth fully herein.

123.    In violation of FEHA, DEFENDANTS failed to take all reasonable steps necessary to prevent sexual harassment, disability harassment, and retaliation against employees.

124.    In perpetrating the above-described conduct, DEFENDANTS and each of them engaged in a pattern, practice, policy, and custom of unlawful sexual harassment, disability harassment, and retaliation. Said conduct on the part of DEFENDANTS and each of them constituted a policy, practice, tradition, custom, and usage which denied PLAINTIFF'S protection of the civil rights statutes enumerated above.

125.    At all relevant time periods DEFENDANTS and each of them failed to make an adequate response and investigation into the conduct of DEFENDANTS and the aforesaid pattern and practice, and thereby established a policy, custom, practice, or usage within the organization of DEFENDANTS which condoned, encouraged, tolerated, sanctioned, ratified, approved of, and/or acquiesced in unlawful sexual harassment, disability harassment, and retaliation towards employees of DEFENDANTS including, but not limited to, PLAINTIFF.

126.    At    all    relevant    time    periodsthere existed within the    organization of DEFENDANTS and each of them a pattern and practice of conduct by their personnel which resulted in sexual harassment, disability harassment, and retaliation including, but not limited to, conduct directed at PLAINTIFF.

127.    DEFENDANTS    did    not    provide    adequate    sexual harassment, disability harassment, and retaliation training with respect to its employees and managers.

128.    DEFENDANTS were put on notice that ARCHER and MCNIEL might be committing sexual harassment, disability harassment, and retaliation in the workplace not later than the date on which he first complained about it. Once DEFENDANTS were put on notice that ARCHER and MCNIEL might be committing sexual harassment, disability harassment, and retaliation in the

COSTANZO LAW FIRM
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

workplace, it was a reasonable step to conduct a thorough investigation into whether ARCHER and MCNIEL were committing sexual harassment, disability harassment, and retaliation in the workplace. DEFENDANTS failed to take this reasonable step of conducting a thorough investigation into whether ARCHER and MCNIEL were committing sexual harassment, disability harassment, and retaliation in the workplace.

129.     DEFENDANTS and each of them knew or reasonably should have known that the failure to provide any or adequate education, training, and information as to their personnel policies and practices regarding sexual harassment, disability harassment, and retaliation would result in sexual harassment, disability harassment, and retaliation. Providing adequate education, training, and information as to their personnel policies and practices regarding sexual harassment, disability harassment, and retaliation was a reasonable step that DEFENDANTS could have taken, but did not take, to prevent sexual harassment, disability harassment, and retaliation in the workplace.

130.     The failure of DEFENDANTS and each of them to take the above-mentioned reasonable steps to prevent harassment constituted deliberate indifference to the rights of employees including, but not limited to, those of PLAINTIFF.

131.     The failure of DEFENDANTS and each of them to take the above-mentioned reasonable steps was a substantial factor in ARCHER and MCNIEL committing additional acts of sexual harassment, disability harassment, and retaliation against PLAINTIFF. These additional acts of sexual harassment, disability harassment, and retaliation by ARCHER and MCNIEL against PLAINTIFF caused PLAINTIFF harm.

132.     PLAINTIFF filed timely complaints against DEFENDANTS with the DFEH alleging sexual harassment, disability harassment, retaliation, and failure to prevent harassment and retaliation. Thereafter, PLAINTIFF received from the DFEH notification of his right to sue in the Courts of the State of California the DEFENDANTS against which complaints had been filed.

133.     By reason of the conduct of DEFENDANTS and each of them as alleged herein, PLAINTIFF has necessarily retained attorneys to prosecute the within action. PLAINTIFF therefore is entitled

1    to reasonable attorney's fees and litigation expenses, including expert witness fees and costs,

2    incurred in bringing the within action.

3    134.    As a result of DEFENDANTS' and each of their actions, PLAINTIFF sustained economic

4    damages to be proven at trial. As a further result of DEFENDANTS' and each of their actions,

5    PLAINTIFF suffered emotional distress resulting in damages to be proven at trial.

6    135.    The above harassing and discriminatory conduct, and failure to take reasonable steps to

7    prevent the same, violates California's FEHA, Cal. Gov. Code §§ 12940 et seq., and California

8    public policy and entitles PLAINTIFF to all categories of damages, including exemplary or

9    punitive damages.

10    136.    The conduct of DEFENDANTS and/or their agents/employees as described herein was

11    malicious and/or oppressive and done with a willful and conscious disregard for PLAINTIFF'S

12    rights and for the deleterious consequences of DEFENDANTS' actions. DEFENDANTS and/or

13    their agents/employees or supervisors authorized, condoned, and ratified the unlawful conduct of

14    the remaining DEFENDANTS. Consequently, PLAINTIFF is entitled to punitive damages

15    against DEFENDANTS.

16    **WHEREFORE,** Plaintiff prays for relief set forth below.

17

18                                   **SIXTH CAUSE OF ACTION**

19    **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
      **AGAINST DEFENDANTS APPLE, ARCHER, MCNIEL, AND DOES 1 – 50**

20    PLAINTIFF realleges incorporates by reference the factual allegations set forth in all preceding

21    paragraphs with the same force and effect as though set forth fully herein.

22    137.    PLAINTIFF is informed and believes and thereon alleges that DEFENDANTS, by and

23    through their principals, agents, and employees, conducted themselves unlawfully in violation of

24    public policy and applicable law as described above with conscious disregard of the result or

25    outcome of such act. Subjecting PLAINTIFF to the conduct described above throughout his

26    employment was extreme and outrageous conduct by DEFENDANTS and each of them.

27

28

COSTANZO LAW FIRM
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

138.    Through the outrageous conduct described above, DEFENDANTS acted with the intent to cause, and with reckless disregard for the probability of causing, PLAINTIFF to suffer severe emotional distress.

139.    At all relevant times, DEFENDANTS had actual or constructive knowledge of extreme and outrageous conduct described herein and condoned, ratified, and participated in such extreme and outrageous acts.

140.    As a direct and proximate result of DEFENDANTS' willful, knowing, and intentional acts, and DEFENDANTS' failure to act, PLAINTIFF has suffered, and will continue to suffer, mental distress and anguish. PLAINTIFF is thereby entitled to general and compensatory damages in an amount to be proven at trial.

141.    The acts of DEFENDANTS, as alleged herein, were done with fraud, oppression, and malice, with a conscious disregard for PLAINTIFF'S rights, and with the intent, design, and purpose of injuring PLAINTIFF, and with an improper and evil motive amounting to malice. Because the above described words and actions, among others, were spoken or carried out and/or ratified by DEFENDANTS and/or managerial agents of DEFENDANTS in whom PLAINTIFF placed his justified and good faith trust, and because said DEFENDANTS acted in a deliberate, malicious, and intentional manner in order to injure and damage the PLAINTIFF, and/or with callous disregard for PLAINTIFF'S rights, PLAINTIFF is therefore entitled to recover punitive damages against DEFENDANTS and each of them.

**WHEREFORE,** Plaintiff prays for relief set forth below.

### SEVENTH CAUSE OF ACTION
### UNLAWFUL RETALIATION IN VIOLATION OF PUBLIC POLICY
### PURSUANT TO *TAMENY V. ATLANTIC RICHFIELD COMPANY*
### DEFENDANTS APPLE, ARCHER, MCNIEL, AND DOES 1 – 50

PLAINTIFF incorporates in this cause of action each and every allegation of the preceding paragraphs, with the same force and effect as though fully set forth herein.

142.    Jurisdiction is invoked in this court pursuant to the public policy and common law of the State of California, pursuant to *Tameny v. Atlantic Richfield Company,* 27 Cal. 3d 167 (1980).

COSTANZO LAW FIRM
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

143. Under California law, there is a fundamental and well-established public policy against discrimination, harassment, or retaliation based on the fact that the employee has a protected characteristic or engaged in a protected activity. Said public policy is embodied in the Constitution of the State of California and California Labor Code section 232.5 [due to disclosure of working conditions] and other sections of the Labor Code. Adverse employment actions taken by an employer motivated by the fact that an employee has a protected characteristic are contrary to said public policy and are thus actionable under the common law of this state.

144. California Labor Code sections 98.6 provides, "(a) A person shall not discharge an employee or in any manner discriminate, retaliate, or take any adverse action against any employee or applicant for employment because the employee or applicant engaged in any conduct delineated in this chapter [i.e. Labor Code §§ 79-107], including the conduct described in subdivision (k) of section 96, and Chapter 5 [i.e. Labor Code §§ 1101-1106] (commencing with section 1101) of Part 3 of Division 2, or because the employee or applicant for employment has filed a bona fide complaint or claim or instituted or caused to be instituted any proceeding under or relating to his or her rights that are under the jurisdiction of the Labor Commissioner, made a written or oral complaint to Court, or because the employee has initiated any action, or has testified or is about to testify in a proceeding pursuant to that section, or because of the exercise by the employee or applicant for employment on behalf of himself, herself, or others of any rights afforded him or her." Any person whose rights are violated according to Labor Code section 98.6(a) "shall be entitled to reinstatement and reimbursement for lost wages and work benefits caused by those acts of the employer." Lab. Code § 98.6(b)(1).

145. "In addition to other remedies available, an employer who violates this section is liable for a civil penalty not exceeding ten thousand dollars ($10,000) per employee for each violation of this section, to be awarded to the employee or employees who suffered the violation." Lab. Code § 98.6(b)(3).

146. California Labor Code section 232.5 provides, "No employer may do any of the following: (a) Require, as a condition of employment, that an employee refrain from disclosing information about the employer's working conditions. (b) Require an employee to sign a waiver or other

COSTANZO LAW FIRM
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

document that purports to deny the employee the right to disclose information about the employer's working conditions. (c) Discharge, formally discipline, or otherwise discriminate against an employee who discloses information about the employer's working conditions. (d) This section is not intended to permit an employee to disclose proprietary information, trade secret information, or information that is otherwise subject to a legal privilege without the consent of his or her employer."

147.   California Labor Code section 1102.5(b) provides: "An employer, or any person acting on behalf of the employer, shall not retaliate against an employee for disclosing information…to a person with authority over the employee or another employee who has the authority to investigate, discover, or correct the violation or noncompliance…if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation, regardless of whether disclosing the information is part of the employee's job duties." Under California law, discharge of an employee perceived to have reported an alleged violation of a statute or regulation violates public policy, even if the employee did not actually make the report. Perceived whistleblowers are also protected from retaliatory discharge as are employees who report suspected violations to other employees. *Diego v. Pilgrim United Church of Christ*, 231 Cal. App. 4th 913 (2014).

148.   Section 1102.5(f) provides that "in addition to other penalties, an employer that is a corporation or limited liability company is liable for a civil penalty not exceeding ten thousand dollars ($10,000) for each violation" of Labor Code section 1102.5.

149.   California Labor Code section 1102.6 provides, "In a civil action or administrative proceeding brought pursuant to Section 1102.5, once it has been demonstrated by a preponderance of the evidence that an activity proscribed by Section 1102.5 was a contributing factor in the alleged prohibited action against the employee, the employer shall have the burden of proof to demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by Section 1102.5."

150.    California Labor Code section 1102.8 provides, "An employer shall prominently display in lettering larger than size 14 point type a list of employees' rights and responsibilities under the whistleblower laws, including the telephone number of the whistleblower hotline described in Section 1102.7."

151.    California Labor Code section 1104 provides, "In all prosecutions under this chapter [i.e. Labor Code §§ 1100-1106], the employer is responsible for the acts of his managers, officers, agents, and employees."

152.    Government Code section 12940(m)(2) provides that it is an unlawful employment practice "[f]or an employer or other entity covered by this part to, in addition to the employee protections provided pursuant to subdivision (h), retaliate or otherwise discriminate against a person for requesting accommodation under this subdivision, regardless of whether the request was granted."

153.    Defendants terminated PLAINTIFF's employment in violation of public policy. DEFENDANTS retaliated against PLAINTIFF because PLAINTIFF has a protected characteristic and/or engaged in protected activity.

154.    PLAINTIFF is informed and believes and, based thereon, alleges that DEFENDANTS' conduct, as described herein, was substantially motivated by PLAINTIFF's opposition to and/or reporting of the actual and/or perceived violations described herein.

155.    PLAINTIFF is informed and believes and, based thereon, alleges that all DEFENDANTS, including the DEFENDANTS named as DOES 1 through 50, inclusive, aided, abetted, incited, compelled, coerced, or conspired to commit one or more of the acts alleged in this Cause of Action.

156.    The conduct of DEFENDANTS described herein above was outrageous and was executed with malice, fraud and oppression, and with conscious disregard for PLAINTIFF's rights, and further, with the intent, design and purpose of injuring PLAINTIFF.

157.    As a proximate result of DEFENDANTS' wrongful acts, PLAINTIFF has suffered, and continues to suffer, substantial losses incurred in seeking substitute employment and in earnings,

bonuses, deferred compensation, stock options, and other employment benefits; and has suffered, and continues to suffer, emotional distress in an amount according to proof at the time of trial.

158.    DEFENDANTS, through their officers, managing agents, and/or their supervisors, authorized, condoned and/or ratified the unlawful conduct described herein above. By reason thereof, PLAINTIFF is entitled to an award of punitive damages in an amount according to proof at the time of trial, as well as attorneys' fees and costs, pursuant to statute.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFF prays for relief as follows:

1.    For general damages according to proof, however, no less than the jurisdictional limit of this court;

2.    For special damages in amounts according to proof;

3.    For liquidated damages in amounts according to proof;

4.    For punitive damages as provided by law;

5.    For declaratory relief as provided by law, including, inter alia, that DEFENDANTS' actions against PLAINTIFF violated Government Code section 12940, et seq., and all other statutes alleged herein;

6.    For injunctive relief as provided by law;

7.    For attorneys' fees as provided by law;

8.    For interest as provided by law;

9.    For cost of suit incurred herein; and

10.    For such other and further relief as the Court deems fair and just.

Dated: June 22, 2022

Respectfully submitted,

Lori J. Costanzo
Lucy Goodnough
Frank Zeccola
Attorneys for Plaintiff

COSTANZO LAW FIRM
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

1

### **DEMAND FOR JURY TRIAL**

2    PLAINTIFF hereby demands a trial by jury on all issues and causes of action so triable.

3

4    Dated: June 22, 2022                                      Respectfully submitted,

5

6                                                                   Lori J. Costanzo

7                                                                   Lucy Goodnough

8                                                                   Frank Zeccola
                                                                    Attorneys for Plaintiff

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COSTANZO LAW FIRM
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

28
FANTA COMPLANT FOR DAMAGES

EXHIBIT 1

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

June 21, 2022

Frank Zeccola
Costanzo Law Firm, APC 111 W. St. John Street #700
San Jose, California 95113

RE:    **Notice to Complainant's Attorney**
       DFEH Matter Number: 202206-17360121
       Right to Sue: Fanta / Apple, Inc. et al.

Dear Frank Zeccola:

Attached is a copy of your complaint of discrimination filed with the Department of Fair
Employment and Housing (DFEH) pursuant to the California Fair Employment and
Housing Act, Government Code section 12900 et seq. Also attached is a copy of your
Notice of Case Closure and Right to Sue.

**Pursuant to Government Code section 12962, DFEH will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California. A courtesy "Notice
of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the DFEH does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,


Department of Fair Employment and Housing



GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

June 21, 2022

RE:   **Notice of Filing of Discrimination Complaint**
      DFEH Matter Number: 202206-17360121
      Right to Sue: Fanta / Apple, Inc. et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the
Department of Fair Employment and Housing (DFEH) in accordance with Government
Code section 12960. This constitutes service of the complaint pursuant to Government
Code section 12962. The complainant has requested an authorization to file a lawsuit. A
copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

This matter may qualify for DFEH's Small Employer Family Leave Mediation
Pilot Program. Under this program, established under Government Code
section 12945.21, a small employer with 5 -19 employees, charged with violation
of the California Family Rights Act, Government Code section 12945.2, has the
right to participate in DFEH's free mediation program. Under this program both
the employee requesting an immediate right to sue and the employer charged
with the violation may request that all parties participate in DFEH's free
mediation program. The employee is required to contact the Department's
Dispute Resolution Division prior to filing a civil action and must also indicate
whether they are requesting mediation.  The employee is prohibited from filing a
civil action unless the Department does not initiate mediation within the time
period specified in section 12945.21, subdivision (b) (4), or until the mediation is
complete or is unsuccessful. The employee's statute of limitations to file a civil
action, including for all related claims not arising under section 12945.2, is tolled
from the date the employee contacts the Department regarding the intent to
pursue legal action until the mediation is complete or is unsuccessful. You may
contact DFEH's Small Employer Family Leave Mediation Pilot Program by
emailing DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter
number indicated on the Right to Sue notice.

Please refer to the attached complaint for a list of all respondent(s) and their contact
information.

No response to DFEH is requested or required.

Sincerely,

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
KEVIN KISH, DIRECTOR
2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

Department of Fair Employment and Housing

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                          GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                          KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 | Elk Grove | CA | 95758
(800) 884-1684 (Voice) | (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov | Email: contact.center@dfeh.ca.gov

June 21, 2022

Joseph Fanta
203 Tamarack Avenue
Morton, IL 61550

RE:     **Notice of Case Closure and Right to Sue**
        DFEH Matter Number: 202206-17360121
        Right to Sue: Fanta / Apple, Inc. et al.

Dear Joseph Fanta:

This letter informs you that the above-referenced complaint filed with the Department of
Fair Employment and Housing (DFEH) has been closed effective June 21, 2022
because an immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

This matter may qualify for DFEH's Small Employer Family Leave Mediation
Pilot Program. Under this program, established under Government Code section
12945.21, a small employer with 5 -19 employees, charged with violation of the
California Family Rights Act, Government Code section 12945.2, has the right to
participate in DFEH's free mediation program. Under this program both the
employee requesting an immediate right to sue and the employer charged with
the violation may request that all parties participate in DFEH's free mediation
program. The employee is required to contact the Department's Dispute
Resolution Division prior to filing a civil action and must also indicate whether
they are requesting mediation. The employee is prohibited from filing a civil
action unless the Department does not initiate mediation within the time period
specified in section 12945.21, subdivision (b) (4), or until the mediation is
complete or is unsuccessful. The employee's statute of limitations to file a civil
action, including for all related claims not arising under section 12945.2, is tolled
from the date the employee contacts the Department regarding the intent to
pursue legal action until the mediation is complete or is unsuccessful. Contact
DFEH's Small Employer Family Leave Mediation Pilot Program by emailing
DRDOnlinerequests@dfeh.ca.gov and include the DFEH matter number
indicated on the Right to Sue notice.

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**                    KEVIN KISH, DIRECTOR

2218 Kausen Drive, Suite 100 I Elk Grove I CA I 95758
(800) 884-1684 (Voice) I (800) 700-2320 (TTY) | California's Relay Service at 711
http://www.dfeh.ca.gov I Email: contact.center@dfeh.ca.gov

To obtain a federal Right to Sue notice, you must contact the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of this DFEH Notice of Case Closure or within 300 days of the alleged discriminatory act, whichever is earlier.

Sincerely,


Department of Fair Employment and Housing

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

**In the Matter of the Complaint of**

Joseph Fanta                                             DFEH No. 202206-17360121

Complainant,

vs.

Apple, Inc.
One Apple Park Way
Cupertino, CA 95014

CLAIRE ARCHER
One Apple Park Way
Cupertino, CA 95014

ANNE MCNIEL
One Apple Park Way
Cupertino, CA 95014

Respondents

_____

**1**. Respondent **Apple, Inc.** is an **employer** subject to suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.).

**2**.Complainant is naming **CLAIRE ARCHER** individual as Co-Respondent(s).
Complainant is naming **ANNE MCNIEL** individual as Co-Respondent(s).

**3**. Complainant **Joseph Fanta**, resides in the City of **Morton**, State of **IL.**

**4**. Complainant alleges that on or about **March 14, 2022**, respondent took the following adverse actions:

**Complainant was harassed** because of complainant's sex/gender, gender identity or expression, disability (physical or mental), medical condition (cancer or genetic characteristic), sexual harassment- hostile environment.

*Complaint – DFEH No. 202206-17360121*

Date Filed: June 21, 2022

Form DFEH-ENF 80 RS (Revised 02/22)

1
2
3

**Complainant was discriminated against** because of complainant's sex/gender, gender identity or expression, disability (physical or mental), medical condition (cancer or genetic characteristic), sexual harassment- hostile environment and as a result of the discrimination was terminated, reprimanded, denied any employment benefit or privilege, denied reasonable accommodation for a disability, denied work opportunities or assignments.

4
5
6
7

**Complainant experienced retaliation** because complainant reported or resisted any form of discrimination or harassment, requested or used a disability-related accommodation, participated as a witness in a discrimination or harassment complaint, requested or used family care or medical leave (cfra) and as a result was terminated, denied hire or promotion, reprimanded, denied any employment benefit or privilege, denied reasonable accommodation for a disability, denied work opportunities or assignments.

8
9

**Additional Complaint Details:** Please see attachment on next page.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

-2-
*Complaint – DFEH No. 202206-17360121*

Date Filed: June 21, 2022

Form DFEH-ENF 80 RS (Revised 02/22)

VERIFICATION

I, **Frank Zeccola**, am the **Attorney** in the above-entitled complaint.  I have read the foregoing complaint and know the contents thereof.  The matters alleged are based on information and belief, which I believe to be true.

On June 21, 2022, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**San Jose, California**

-3-

*Complaint – DFEH No. 202206-17360121*

Date Filed: June 21, 2022

Form DFEH-ENF 80 RS (Revised 02/22)

1. FANTA was offered a position with APPLE, one of the most well-known companies in the world, on August 7, 2017.

2. In order for FANTA to take the job at APPLE, his wife had to give up her tenured and high-paying teaching position of over ten years in Michigan.

3. FANTA started working at APPLE on September 5, 2017, as a Project Quality Engineer on the Mac Quality Team. Throughout his employment, he earned between $250,000 and $320,000 per year, plus a full benefits package. He performed his job well and received positive performance reviews in 2018 and 2019, with annual pay raises and bonuses totaling $81,000, including a $6,000 bonus and refresh grant of REDACTED restricted stock units each year.

4. What at first seemed like an amazing career opportunity at APPLE quickly soured as a result of his direct supervisors CLAIRE ARCHER and ANNE MCNIEL creating a strong anti-male culture within the team both during and after work hours.

### ***Group Chat Messages are Documented Evidence of APPLE'S Culture of Discrimination***

5. ARCHER set up a text group with certain female APPLE employees and female significant others of male employees, including FANTA'S wife.

6. In that group chat, ARCHER made disparaging comments about not wanting men around. ARCHER bragged about getting a male employee transferred to another team and replacing him with a woman.

7. In a February 25, 2020, group text exchange, one woman commented, "The 14th weekend is at Patrick's day eve! We could all bring green booze! And . . . I guess the guys could come." ARCHER replied to the group, "Guys? meh."

8. Later, on February 25, 2020, when a female colleague told ARCHER in a group exchange, "The guys are so worthless! You need to change up your team. [smiley emoji]", ARCHER responded, "I did I got rid of your guy REDACTED! ha ha."

9. When the woman responded, "He was the worst I need to follow suit. On a serious note . . . we all of us want a girls night out!", ARCHER replied, "OH yes! Next Saturday?"

10. At one point, one of FANTA'S male colleagues told him that ARCHER made a comment that she was glad she finally had more females than males on her team. As FANTA'S colleague

explained in a text message to him, "She said [sic] mentioned off handed comment – not sure what the deal was—that she finally had more girls than guys on her team…but she followed up her comment with—they are all qualified so that would cover her butt."

11. MCNIEL sent similar anti-male texts to female team members. As one example, on October 13, 2020, she sent a group text saying, "Yay for more women in this announcement."

### *FANTA Was Denied an Earned Bonus for His Contributions to APPLE, and He Was Replaced by a Female Co-Worker*

12. FANTA started working on the REDACTED project in the summer of 2018, and final implementation occurred in May 2019. Despite his overwhelming workload, he ultimately completed implementation of the project on schedule.

13. The REDACTED project FANTA conceived of and implemented has already saved APPLE millions of dollars.

14. ARCHER acknowledged the importance of the work FANTA was doing. At a February 8, 2019, staff meeting, ARCHER told the team that completing the REDACTED project would warrant an "Exceeds Expectations" rating in the "Innovation" category for annual review purposes.

15. However, when review time came around in late 2019, ARCHER and MCNIEL ignored FANTA'S notable contributions in the area of innovation and rated him merely as "Achieved Expectations." This rating is directly contrary to a comment in the same review which states, "Joe's concept of REDACTED was definitely innovative . . . ."

16. This was upsetting in and of itself, but even more so because FANTA only earned his spring bonus if he achieved "Exceeds Expectations" on his performance review, ARCHER'S and MCNIEL'S arbitrary and biased "Achieved Expectations" rating in his 2019 performance review cost him a well-deserved bonus.

17. FANTA found ARCHER'S and MCNIEL'S refusal to acknowledge his contributions so upsetting and wrong that he included a written response in his 2019 performance review before signing it on November 1, 2019.

18. FANTA'S response highlighted his conception and implementation of the money-saving REDACTED project: "In over 10 years of having a professional career, this is the first performance review I have responded to. While I respect my manager's opinion, I have to respectfully disagree with some of the comments in this review . . . . The project was a resounding success. There were no delays, no impact to line speeds, no hidden costs, and cross functional support and encouragement . . . . Estimated cost savings for this program are at 1.3 million and if implemented on all of REDACTED, the savings would be over 10 million per year."

19. To add insult to injury, while FANTA was excited for the REDACTED project, in or about September 2019, ARCHER inexplicably took him off the project and out of REDACTED altogether, replacing him there with a female member of the team.

20. ARCHER'S and MCNIEL'S downplaying of his notable accomplishment with the REDACTED project caused FANTA tremendous anxiety and disappointment.

21. Unfortunately, this was not the first nor last time FANTA'S contributions to APPLE were ignored. Another example occurred when FANTA made a key introduction for APPLE to a third-party company that went on to work with APPLE on multiple projects. FANTA was not given any credit for this imperative introduction.

### *FANTA'S Leadership Was Undermined by Female Colleagues*

22. ARCHER and MCNIEL often told FANTA that he needed to appear as the lead Product Quality Engineer ("PQE"). When he took on that role, however, they routinely undermined him in front of his colleagues.

23. For example, at a recent REDACTED meeting about a REDACTED build, which was a large cross-functional team meeting, FANTA told the group that he needed to discuss the REDACTED plan offline with his team after the call.

24. MCNIEL immediately spoke up and told the group that there was no need for FANTA to discuss the REDACTED plan with his team.

25. With female PQEs, MCNIEL never contradicted them in front of their colleagues and always publicly supported their decisions to speak offline about issues.

26. By undermining FANTA'S role as the lead PQE on the REDACTED build, MCNIEL created doubt within his team about FANTA'S capabilities.

27. As another example, during a recent call with the REDACTED, the team was brainstorming about the layout and ways to overcome certain issues. FANTA came up with an idea to use an REDACTED between REDACTED to simplify security requirements.

28. During the call, the REDACTED said FANTA'S idea was a good one and that they would investigate it. Despite that show of support, however, MCNIEL interjected herself and claimed that FANTA'S idea was bad and would not possibly work.

29. MCNIEL did not criticize anyone else on the call during that brainstorming session.

### *FANTA Was Overlooked for Work Opportunities in Favor of Female APPLE Employees*

30. ARCHER and MCNIEL were quick to coach and support female team members while complaining vocally about men on the team.

31. In early 2018, FANTA asked ARCHER to add him to the interview team, but she only gave him the opportunity to interview once. He later learned that several female team members regularly participated in multiple interviews.

32. ARCHER also asked FANTA to skip a training session at REDACTED, despite telling several female employees to make time to take the same class. FANTA was taken aback and asked both ARCHER and MCNIEL to let him take the third class for his professional development, but they refused.

33. ARCHER supported women for promotions over their male counterparts. ARCHER promoted at least two female employees—MCNIEL and REDACTED—before promoting REDACTED, a male employee who was with APPLE for seven plus years and had more experience than either MCNIEL or REDACTED.

### *FANTA Was Given a Demanding Travel Schedule and Berated for Wanting to Spend More Time with His Young Children*

34. ARCHER also had unrealistic expectations of FANTA with respect to time away from his family, requiring him to report directly to work after having spent the prior 14 days in China on a business trip.

35. After an October 5, 2018, team meeting, ARCHER stated that employees were required to be back in the office the day of landing from travel.

36. ARCHER pushed back on allowing FANTA to take even a day off work between trips to China, even if there was no weekend between trips.

37. During one period, FANTA traveled to China multiple times and had only five days at home before he returned to China. His three young children were acting out because he had been away for so long, so FANTA requested two days off work to spend with his family before having to fly back to Asia.

38. Although ARCHER begrudgingly gave FANTA the two days off that he requested, she tried to make him feel guilty about it by passive aggressively texting him, "Ideally I'd like you there Thursday but I know the kids have struggled."

39. When FANTA raised the issue of his excessive travel with ARCHER, she grew angry with him and pointed out that he had already used the most vacation and compensatory time of anyone on the team.

### *FANTA and His Male Colleagues Were Harassed and Humiliated Because of Their Gender*

40. Although FANTA adhered strictly to APPLE'S written travel policy, ARCHER and MCNIEL also harassed him regarding his travel expenses—in contrast to his female counterparts. Their harassment included to referring him to Employee Relations ("ER") to investigate his expense reports, even though there was no basis to do so.

41. ARCHER often complained to FANTA about his male colleagues but did not complain about female employees.

42. APPLE management created a toxic work environment for not only FANTA but for other male employees. For example:

   a. ARCHER frequently made disparaging comments about Mr. REDACTED and Mr. REDACTED calling them both "worthless".

   b. FANTA worked extensively with Mr. REDACTED on APPLE'S REDACTED project. ARCHER often made unflattering comments about Mr. REDACTED within earshot of

other employees, and Mr. REDACTED once confided in FANTA that he knew ARCHER did not like him and that he overheard some of her negative remarks about him.

c. Messrs. REDACTED, REDACTED, and REDACTED all eventually left APPLE.

d. Another male employee, REDACTED, filed an HR complaint after ARCHER said he "does not know how to communicate.  Please do not let him speak in meetings."

e. Returning from a meeting one day, ARCHER bragged to the team that a text she had up on her screen that had negative comments about an employee accidentally got displayed at the meeting. That cavalier attitude was typical of the unprofessional, bullying behavior ARCHER frequently directed at FANTA and other male employees.

f. FANTA overheard ARCHER tell a male team member to "lay off the cologne" as it was "too much." FANTA then saw the man sniff himself to see if his cologne was overbearing. ARCHER did not make such degrading, inappropriate comments to female APPLE employees, reserving them for FANTA and his male colleagues.

43. Additionally, ARCHER often used vulgar, abusive language to criticize FANTA'S work. For example, on FANTA'S first night in China after flying there from the U.S., then working a full day, ARCHER sent him a text message that read, "Your REDACTED file is fucked." When FANTA asked which part was wrong, ARCHER replied, "All of it It's so bad And changing REDACTED Wtf? And that REDACTED thing??"

44. In the end, FANTA'S file was actually correct, but ARCHER never apologized to him for her vulgar outburst and misplaced criticism.

### *FANTA Was Discriminated Against Because of his Disability*

45. ARCHER'S and MCNIEL'S abusive treatment created such a hostile working environment for FANTA that in August 2019 he started experiencing heart palpitations and severe work-related anxiety.

46. Additionally, FANTA suffers from severe allergies and sinus issues which are considered disabilities under California law. ARCHER was aware of his disability since 2017. Over the course of several months, ARCHER often made critical comments about FANTA'S breathing

while he sat at his desk, telling him in a loud voice, "Fanta, why are you sighing so much over there?", "Fanta, you okay?" and "Fanta, you're breathing heavy."

47. FANTA'S colleagues could hear ARCHER'S humiliating comments.

48. While FANTA tried to laugh off ARCHER'S remarks, they caused him a great deal of anxiety. While sitting at his desk, he found himself constantly monitoring how he breathed so as not to attract unwanted attention from ARCHER. Sometimes he felt the need to breathe deeply but forced himself not to.

49. The fact that he could not breathe deeply while sitting at his desk for fear that ARCHER might publicly criticize him for making too much noise only exacerbated his palpitations and anxiety.

50. FANTA frequently noticed his heart beating irregularly and felt as if he could not breathe, so he often had to leave his desk and go outside to get some air, which reduced his productivity.

51. FANTA'S heart palpitations and anxiety became so severe that on December 12, 2019, he had to visit the emergency room, where he was kept for several hours of observation.

52. On the advice of his physician, FANTA applied for and received approval for CFRA disability leave. FANTA was out of the office on approved short-term disability leave from December 14, 2019, to March 2, 2020.

### *FANTA Was Retaliated Against for Taking Disability Leave*

53. When FANTA returned from leave on March 2, 2020, he was shocked to encounter blatant retaliation from ARCHER and MCNIEL, who apparently resented him for having a disability and needing a disability leave accommodation.

54. In a March 2, 2020, email, FANTA'S first day back at work, MCNIEL targeted him by sending him an extensive list of tasks to complete. MCNIEL did not allow FANTA even a day to reacclimate to being back in the office or the opportunity to catch up on the more than 3,000 emails that accumulated in his absence.

55. MCNIEL'S list of tasks was completely unrealistic and created so much anxiety in FANTA that it exacerbated the disability for which he went on leave.

56. On March 5, 2020—just two days after FANTA returned to work—MCNIEL targeted him again by referring him to ER for purported violations of APPLE'S travel policy, as reflected

in his expense reports. However, the REDACTED, Apple's third-party administrator for leave requests, specifically instructed FANTA not to perform any work duties during his leave. Furthermore, ARCHER and MCNIEL texted FANTA that Human Resources (HR) said not to worry about the expense reports and that he could complete them when he came back from leave.

57. FANTA'S disability continued to worsen as his managers continued to target and retaliate against him.

58. Moreover, after returning to the office following his leave, FANTA learned that several employees saw various managers, including ARCHER and MCNIEL, send disparaging texts about FANTA while he was out on disability leave.

59. FANTA also noticed that ARCHER'S and MCNIEL'S attitude toward him changed dramatically when he returned to work. They only spoke to him when absolutely necessary and avoided him to the extent they could.

60. ARCHER'S and MCNIEL'S retaliation against FANTA for taking approved leave carried over into his 2020 performance review. ARCHER and MCNIEL rated FANTA "Expected more – Did not always perform at the level expected of the role" in the "Teamwork" category, "Achieved expectations – Performed at the high level expected of the role" in the "Innovation" category, and "Expected more – Did not always perform at the level expected for the role" in the "Results" category.

61. It was around this time, August 2020, that FANTA moved with his wife and three young children into an RV due to his fear of further retaliation and losing his stable income from APPLE.

62. In FANTA'S October 13, 2020, review, ARCHER indirectly criticized FANTA for taking the disability leave to which he was legally entitled, characterizing it as a "burden on team members".

63. The only possible instances where "burdens" might have been placed on FANTA'S team members was when he was out on disability leave: At no other time throughout the year did ARCHER or MCNIEL—or anyone else in management—tell FANTA that his colleagues were

having to fill in gaps because of the alleged "inconsistency" referred to in his 2020 performance review. In fact, FANTA was the one filling gaps left by other employees. For example, when FANTA returned from his first leave, he was asked to take over for Mr. REDACTED on a new launch after REDACTED's abrupt departure. FANTA was able to jump into the program and launch it successfully with minimal assistance from ARCHER and MCNIEL. This was conveniently left off his performance review.

64. Due to the escalation of the harassment, FANTA took another medical leave from December 2020 through March 14, 2022.

65. From December 2020 through March 2022, FANTA was denied disability and received no pay during this time. Additionally, for the time he was out, he missed out on a bonus and a stock refresh which he was entitled to.

66. It was only after FANTA'S leave when he realized APPLE'S final act of retaliation. While FANTA was out on disability leave, his job title was changed to "Associate." The term "Associate" in the tech field, and many other fields, is analogous to a person with less experience. Changing his title was an act of retaliation and could damage FANTA'S chances at finding future employment. Beyond that, it caused FANTA severe emotional distress when he found out his well-earned job title had been changed simply because he took disability leave.

### *FANTA Filed Multiple Complaints with APPLE*

67. After his managers wrongfully referred him to ER for alleged expense report violations and gave him a poor performance review that ignored his substantial contributions to his team and APPLE as a whole, FANTA realized that ARCHER and MCNIEL would never afford him the same opportunities they gave his female colleagues.

68. Thus, on October 27, 2020, FANTA sent APPLE a complaint that read, "Hello, I believe I am being targeted because I am a man, had a disability, and took a disability leave."

69. FANTA also filed a case with the report key number 361670702501 in APPLE'S third-party external reporting system, REDACTED.

70. On March 11, 2022, FANTA received an email from REDACTED from ER at APPLE. She said that she conducted an "investigation" and "was not able to substantiate you were targeted."

No details on that "investigation" were provided but it is clear that not all the evidence was considered with equal weight.

71. FANTA experienced significant emotional distress as a result of the foregoing conduct. FANTA currently attends weekly therapy to help deal with the continued emotional trauma.

### *FANTA Was Constructively Discharged*

72. On March 14, 2022, after enduring years of discrimination and working in a hostile work environment, FANTA was forced to resign from APPLE for the sake of his health and well-being. By resigning, FANTA lost all his unvested stocks; a value of approximately $200,000.

73. APPLE took ten (10) days to acknowledge his resignation.

74. Since his resignation, FANTA found a new job paying *less than a half* of what he made at APPLE. He was forced to relocate his family and incur significant relocation costs due to being unable to afford Silicon Valley's high cost of living with his new salary.

1  Lori J. Costanzo, SBN 142633
2  Lucy Goodnough, SBN 310607
   Frank Zeccola, SBN 308875
3  COSTANZO LAW FIRM
   111 West St. John, #700
4  San Jose, CA 95113
   Phone:    408.993.8493
5  Fax:      408.993.8496
   Email:    Lori@costanzo-law.com
6            lucy.goodnough@costanzo-law.com
7            frank.zeccola@costanzo-law.com

8  Attorney for **Plaintiff Joseph Fanta**

9                **IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA**
10                   **IN AND FOR THE COUNTY OF SANTA CLARA**

11  JOSEPH FANTA, an individual,              **DFEH Case No.: 202206-17360121**

12          Plaintiff,                        **PROOF OF SERVICE**

13  -v-

14
    APPLE INC., a California corporation
15  doing business in California; CLAIRE
    ARCHER, an individual; ANNE MCNIEL,
16  an individual; and DOES 1-50, inclusive,

17
            Defendants.
18

19

20

21

22

23

24

25

26

27

28

COSTANZO LAW FIRM
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

**PROOF OF SERVICE BY CERTIFIED & ELECTRONIC MAIL**

STATE OF CALIFORNIA, COUNTY OF SANTA CLARA

I am employed in the County of Santa Clara, State of California.  I am over the age of eighteen (18) years and not a party to the within action.  My business address is 111 W. St. John Street, Suite 700, San Jose, CA 95113. On June 21, 2022, I served the within:

**NOTICE OF FILING DISCRIMINATION COMPLAINT – DFEH MATTER NUMBER: 202206-17360121, JOSEPH FANTA V. APPLE, INC., ET AL. WITH RIGHT TO SUE**

on the parties in said action, by the following means:

☒      (BY CERTIFIED MAIL) By placing a true copy thereof, enclosed in a sealed envelope with postage thereon fully prepaid for collection and mailing on that date following ordinary business practices, in the United States Mail at the COSTANZO LAW FIRM, San Jose, CA, addressed as shown below.  I am readily familiar with this business's practice for collection and processing of correspondence for mailing with the U. S. Postal Service, and in the ordinary course of business, correspondence would be deposited with the U. S. Postal Service the same day it was placed for collection and processing.

☒      (BY EMAIL) By transmitting a true copy thereof by electronic mail from jeremy.dvorak@costanzo-law.com to the interested parties to said action at the e-mail addresses shown below.

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct and that this declaration was executed on June 21, 2022, in San Jose, California.

_____
Jeremy S. Dvorak

NAME(S) AND ADDRESS(ES) OR FAX NUMBER(S) OF EACH PARTY SERVED:

| Isela Perez<br>One Apple Park Way MS 169-5BE<br>Cupertino, CA 95014<br>Isela_perez@apple.com<br>**\*VIA EMAIL ONLY\*** | Apple, Inc.<br>One Apple Park Way<br>Cupertino, CA 95014<br><br>**\*VIA CERTIFIED MAIL ONLY\*** |
|---|---|
| Claire Archer<br>One Apple Park Way<br>Cupertino, CA 95014<br><br>**\*VIA CERTIFIED MAIL ONLY\*** | Anne McNiel<br>One Apple Park Way<br>Cupertino, CA 95014<br><br>**\*VIA CERTIFIED MAIL ONLY\*** |

COSTANZO LAW FIRM
111 W. ST. JOHN STREET #700
SAN JOSE, CA 95113

# EXHIBIT B

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | |
|---|---|
| **NOTICE TO DEFENDANT:**<br>*(AVISO AL DEMANDADO):*<br>APPLE INC., a California corporation doing business in California;<br>CLAIRE ARCHER, an individual; ANNE MCNIEL, an individual;<br>and DOES 1-50, inclusive,<br><br>**YOU ARE BEING SUED BY PLAINTIFF:**<br>*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*<br><br>JOSEPH FANTA, an individual, | *FOR COURT USE ONLY*<br>*(SOLO PARA USO DE LA CORTE)*<br><br>E-FILED<br>6/22/2022 11:46 AM<br>Clerk of Court<br>Superior Court of CA,<br>County of Santa Clara<br>22CV400298<br>Reviewed By: M. Bui<br>Envelope: 9277040 |

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.
*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Superior Court of CA - Santa Clara<br><br>191 N. First Street<br>San Jose, CA 95113 | CASE NUMBER:<br>*(Número del Caso):*<br><br>22CV400298 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Lori J. Costanzo, Frank Zeccola, Costanzo Law Firm, 111 W. St. John Street, #700, San Jose, CA 95113 ,408-993-8493

| DATE: 6/22/2022 11:46 AM | Clerk of Court | Clerk, by | M. Bui | , Deputy |
|---|---|---|---|---|
| *(Fecha)* | | *(Secretario)* | | *(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify):

3. ☐ on behalf of (specify):

  under: ☐ CCP 416.10 (corporation)   ☐ CCP 416.60 (minor)
         ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
         ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
         ☐ other (specify):
4. ☐ by personal delivery on (date):

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*
Lori J. Costanzo, SBN 142633; Frank Zeccola, SBN 308875
Costanzo Law Firm, APC
111 W. St. John Street, Suite 700
San Jose, CA 95113
TELEPHONE NO.: (408) 993-8493    FAX NO.: (408) 993-8496
ATTORNEY FOR *(Name):* Plaintiff Joseph Fanta

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Santa Clara
STREET ADDRESS: 191 N. First Street
MAILING ADDRESS: 191 N. First Street
CITY AND ZIP CODE: San Jose, 95113
BRANCH NAME: Downtown Superior Court (DTS)

CASE NAME:
Joseph Fanta v. Apple, Inc., et al.

FOR COURT USE ONLY

**Electronically Filed
by Superior Court of CA,
County of Santa Clara,
on 6/22/2022 11:46 AM
Reviewed By: M. Bui
Case #22CV400298
Envelope: 9277040**

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: 22CV400298 |
|---|---|---|
| ✓ **Unlimited** (Amount demanded exceeds $25,000)    **Limited** (Amount demanded is $25,000 or less) | **Counter**    **Joinder** <br> Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE: <br> DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
- [ ] Auto (22)
- [ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
- [ ] Asbestos (04)
- [ ] Product liability (24)
- [ ] Medical malpractice (45)
- [ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
- [ ] Business tort/unfair business practice (07)
- [ ] Civil rights (08)
- [ ] Defamation (13)
- [ ] Fraud (16)
- [ ] Intellectual property (19)
- [ ] Professional negligence (25)
- [ ] Other non-PI/PD/WD tort (35)

**Employment**
- [✓] Wrongful termination (36)
- [ ] Other employment (15)

**Contract**
- [ ] Breach of contract/warranty (06)
- [ ] Rule 3.740 collections (09)
- [ ] Other collections (09)
- [ ] Insurance coverage (18)
- [ ] Other contract (37)

**Real Property**
- [ ] Eminent domain/Inverse condemnation (14)
- [ ] Wrongful eviction (33)
- [ ] Other real property (26)

**Unlawful Detainer**
- [ ] Commercial (31)
- [ ] Residential (32)
- [ ] Drugs (38)

**Judicial Review**
- [ ] Asset forfeiture (05)
- [ ] Petition re: arbitration award (11)
- [ ] Writ of mandate (02)
- [ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
- [ ] Antitrust/Trade regulation (03)
- [ ] Construction defect (10)
- [ ] Mass tort (40)
- [ ] Securities litigation (28)
- [ ] Environmental/Toxic tort (30)
- [ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
- [ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
- [ ] RICO (27)
- [ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
- [ ] Partnership and corporate governance (21)
- [ ] Other petition *(not specified above)* (43)

2. This case [ ] is [✓] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties
   b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
   c. [ ] Substantial amount of documentary evidence
   d. [ ] Large number of witnesses
   e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [✓] monetary  b. [✓] nonmonetary; declaratory or injunctive relief  c. [✓] punitive
4. Number of causes of action *(specify):* 7
5. This case [ ] is [✓] is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: June 22, 2022
Frank Zeccola
(TYPE OR PRINT NAME)      ►      (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use <br> Judicial Council of California <br> CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740; <br> Cal. Standards of Judicial Administration, std. 3.10 <br> www.courtinfo.ca.gov |

CM-010

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property Damage/Wrongful Death
Uninsured Motorist (46) *(if the case involves an uninsured motorist claim subject to arbitration, check this item instead of Auto)*

**Other PI/PD/WD (Personal Injury/ Property Damage/Wrongful Death) Tort**
Asbestos (04)
    Asbestos Property Damage
    Asbestos Personal Injury/ Wrongful Death
Product Liability *(not asbestos or toxic/environmental)* (24)
Medical Malpractice (45)
    Medical Malpractice– Physicians & Surgeons
    Other Professional Health Care Malpractice
Other PI/PD/WD (23)
    Premises Liability (e.g., slip and fall)
    Intentional Bodily Injury/PD/WD (e.g., assault, vandalism)
    Intentional Infliction of Emotional Distress
    Negligent Infliction of Emotional Distress
    Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business Practice (07)
Civil Rights (e.g., discrimination, false arrest) *(not civil harassment)* (08)
Defamation (e.g., slander, libel) (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
    Legal Malpractice
    Other Professional Malpractice *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
    Breach of Rental/Lease Contract *(not unlawful detainer or wrongful eviction)*
    Contract/Warranty Breach–Seller Plaintiff *(not fraud or negligence)*
    Negligent Breach of Contract/ Warranty
    Other Breach of Contract/Warranty
Collections (e.g., money owed, open book accounts) (09)
    Collection Case–Seller Plaintiff
    Other Promissory Note/Collections Case
Insurance Coverage *(not provisionally complex)* (18)
    Auto Subrogation
    Other Coverage
Other Contract (37)
    Contractual Fraud
    Other Contract Dispute

**Real Property**
Eminent Domain/Inverse Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
    Writ of Possession of Real Property
    Mortgage Foreclosure
    Quiet Title
    Other Real Property *(not eminent domain, landlord/tenant, or foreclosure)*

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal drugs, check this item; otherwise, report as Commercial or Residential)*

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
    Writ–Administrative Mandamus
    Writ–Mandamus on Limited Court Case Matter
    Writ–Other Limited Court Case Review
Other Judicial Review (39)
    Review of Health Officer Order
    Notice of Appeal–Labor Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal. Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims *(arising from provisionally complex case type listed above)* (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
    Abstract of Judgment (Out of County)
    Confession of Judgment *(non-domestic relations)*
    Sister State Judgment
    Administrative Agency Award *(not unpaid taxes)*
    Petition/Certification of Entry of Judgment on Unpaid Taxes
    Other Enforcement of Judgment Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified above)* (42)
    Declaratory Relief Only
    Injunctive Relief Only *(non-harassment)*
    Mechanics Lien
    Other Commercial Complaint Case *(non-tort/non-complex)*
    Other Civil Complaint *(non-tort/non-complex)*

**Miscellaneous Civil Petition**
Partnership and Corporate Governance (21)
Other Petition *(not specified above)* (43)
    Civil Harassment
    Workplace Violence
    Elder/Dependent Adult Abuse
    Election Contest
    Petition for Name Change
    Petition for Relief From Late Claim
    Other Civil Petition

**CIVIL CASE COVER SHEET**